JAMES RUNKEL, an Infant, by LILLIAN RUNKEL, His Guardian ad Litem, et al., Appellants, v. CITY OF NEW YORK et al., Respondents.

Second Department, June 29, 1953.

*Alfred S. Julien* and *Abraham Yesnowitz* for appellants.

*Denis M. Hurley, Corporation Counsel (Samuel D. Johnson* and *Seymour B. Quel* of counsel), for City of New York, respondent.

*George S. Pickwick* for Tinnie Venetek and another, respondents.

*Per Curiam.* In a consolidated action of separate suits against the individual defendants and the City of New York, the infant plaintiffs sue to recover for personal injuries sustained when an abandoned three-story multiple dwelling, adjacent to a public street and bordering upon it, collapsed to the ground floor and buried them in the debris. The parents sue to recover for expenses and for loss of services of the infants. At the time

the building collapsed the infants were inside frolicking, and technically they were trespassers. Plaintiffs seek to hold liable the owners of the building and the City of New York. When the action came on for trial before the court and jury, the court dismissed the complaint on the opening statement of plaintiffs' counsel. From the judgment of dismissal, plaintiffs appeal.

It is well settled that no complaint should be dismissed on the opening statement of counsel unless it appears beyond doubt that no question of fact is involved; that, accepting as true all the facts stated on the opening and resolving in plaintiff's favor all the material facts in issue, plaintiff nevertheless is precluded from recovery as matter of law; and that if there be any doubt as to a defendant's right to a dismissal on the law plaintiff should be put to his proof. (*Hoffman House* v. *Foote,* 172 N. Y. 348; *French* v. *Central New York Power Corp.,* 275 App. Div. 238.) Applying this doctrine, it was error to dismiss the complaint here, for the following reasons:

(1) From the complaint and from the opening statement, it appears that the building was decayed, rotted, without doors, windows or barricades and in imminent danger of collapse; that this condition had existed for some time before the accident on February 7, 1945; that the condition was common knowledge and both the owner and the city are chargeable with notice thereof; that it was a nuisance as a matter of law; that on December 18 or 19, 1944, some fifty days before the building collapsed, a city building inspector examined the building, found that it was in imminent danger of collapse and recommended that it be made secure or demolished at once; that the following day, December 20, 1944, the superintendent of buildings made a formal finding to that effect and posted a notice directed to the owner calling attention to the dangerous condition of the building and requiring that the building be secured or demollished at once; and that thereafter both the owners and the city remained dormant and took no further action until after the collapse of the building on February 7, 1945.

(2) The original records of the city's building department, which were received as part of the opening statement and as part of the record, confirm in a general way the opening statement. These records disclose the following:

(a) That on December 19, 1944, Inspector Kane made a report to the borough superintendent of buildings, to the effect that he examined the premises and found them to be " dangerous or unsafe structurally or as a fire hazard," that a portion of the

building " is in danger of collapse," and that the building " must be taken down or removed, or made safe and secure " by " Properly repair, * * * or demolish building at once."

(b) That on January 8, 1945, the same inspector made a " Special Report " to the borough superintendent, to the effect that he examined the premises on January 5, 1945, and that he recommends a " survey " — the survey being a prerequisite required by section C26–196.0 of the Administrative Code of the City of New York to authorize the institution of a formal " unsafe building " proceeding in the Supreme Court.

(c) That on February 7, 1945, the day of the accident, one of the owners was served with a notice, dated December 20, 1944, informing her that the premises had been reported as unsafe and dangerous, and requiring same to be made " safe and secure ", or demolish " at once."

(d) That on February 7, 1945, a " notice of survey and summons " was prepared pursuant to said section C26–196.0 and served on one of the owners, Tinnie Venetek, on February 8, 1945, advising her of the dangerous condition, requesting her to make the building " safe and secure or to take it down, at once," and notifying her that a survey would be made on February 9, 1945.

(e) That by February 26, 1945, pursuant to a precept issued out of the Supreme Court on February 13, 1945, the city had completed the demolition of the building and by March 6, 1945, the city had completed the removal of the wreckage at a total cost of $670, which it assessed against the owners.

(3) An abandoned open structure which is so rotted and dilapidated that it is in imminent danger of collapse may be said to constitute a trap or an " inherently dangerous " instrumentality which is in the same class as an explosive substance, inflammable material, a live electric wire or a spring gun. Injury sustained by any person, even though he be a trespasser, due to such an inherently dangerous instrumentality, may be said to have been caused by the wanton or intentional or inhuman act of the one responsible for its existence or its removal and will cast him in liability, provided: (a) that care " commensurate with the risk involved " has not been taken to guard against the injury; and (b) that the accident was " foreseeable " — as it was here because of the structure's proximity to the public highway. (*Kingsland* v. *Erie Co. Agricultural Soc.*, 298 N. Y. 409, 424; *Hallenbeck* v. *Lone Star Cement Corp.*, 273 App. Div. 327, 331–332, 337, affd. 299 N. Y. 777; *French* v. *Central New*

*York Power Corp.,* 275 App. Div. 238, *supra; French* v. *Central New York Power Corp.,* 277 App. Div. 1157; *Beickert* v. *G. M. Laboratories,* 242 N. Y. 168, 174; *Travell* v. *Bannerman,* 71 App. Div. 439, revd. on other grounds, 174 N. Y. 47; *Carlock* v. *Westchester Lighting Co.,* 268 N. Y. 345, 350–351.)

(4) The two cases in this court (*Breeze* v. *City of New York,* 249 App. Div. 856, affd. 275 N. Y. 528, and *Brennan* v. *City of New York,* 266 App. Div. 790), relied on by the trial court in dismissing the complaint, are readily distinguishable. In each of these cases the complaint was dismissed after a trial. The record clearly showed, however, that the structure there did not border upon the public highway and that it was not of an " inherently dangerous " character. Here, based upon the conceded facts as to the condition of the structure and as to the imminency of its collapse, coupled with its immediate proximity to the public highway, it may well be said, within the doctrine of the cases cited, that the structure was inherently dangerous. Hence, the failure to exercise care commensurate with such danger will create liability toward a trespasser. (*Kingsland* v. *Erie Co. Agricultural Soc., supra; Hallenbeck* v. *Lone Star Cement Corp., supra; French* v. *Central New York Power Corp., supra.*)

(5) Apart from negligence, the owners in maintaining such an inherently dangerous structure or public nuisance facing the highway, and the city in permitting it to be maintained, may be said to have violated a mandatory duty imposed upon them by statute to abate it. (Administrative Code of City of New York, §§ 564–15.0, 564–17.0, C26–193.0, C26–194.0–C26–198.0, C26–201.0; Multiple Dwelling Law, § 309, subd. 1, par. a; subd. 2, pars. a, b, c, d, e; subd. 4, pars. a, b, c.) Plaintiffs come within the class of persons intended to be protected by these statutory provisions; consequently, they may sue to recover damages caused by defendants' breach of such provisions; and the infant plaintiffs' conduct in trespassing upon the dangerous structure will not defeat plaintiffs' right of recovery: (As to the owners: *Chotapeg, Inc.,* v. *Bullowa,* 291 N. Y. 70, 73–74, and cases there cited; *Pine Grove Poultry Farm* v. *Newtown By-Products Mfg. Co.,* 248 N. Y. 293, 296–297; *Boronkay* v. *Robinson & Carpenter,* 247 N. Y. 365, 368; *Karpeles* v. *Heine,* 227 N. Y. 74, 81) (As to the city: *Oeters* v. *City of New York,* 270 N. Y. 364, 367; *O'Donnell* v. *City of Syracuse,* 184 N. Y. 1, 9–10; *Springfield Fire Ins. Co.* v. *Village of Keeseville,* 148 N. Y. 46, 53; *Cain* v. *City of Syracuse,* 95 N. Y. 83; *McCarthy* v. *City of Syracuse,* 46 N. Y. 194, 196).

(6) Assuming that the statutory duty here imposed upon the city relates to a governmental function, the former sovereign immunity from liability for negligence or failure in the performance of a duty so related, no longer exists. The State and every political subdivision have unconditionally surrendered their sovereign immunity. A municipality may now be cast in liability on precisely the same basis as any individual who is obligated to discharge the governmental function involved and who fails in that duty, provided that the duty has been imposed for the benefit of the person injured by such failure. Whenever a municipality is sued for breach of a duty relating to a governmental function liability must be " ' determined in accordance with the same rules of law as apply to actions in the supreme court against individuals or corporations ' " (*Steitz* v. *City of Beacon,* 295 N. Y. 51, 54, 55; *Bernardine* v. *City of New York,* 294 N. Y. 361; *McCrink* v. *City of New York,* 296 N. Y. 99, 106; *Dunham* v. *Village of Canisteo,* 303 N. Y. 498, 502, 503). In other words, in each case the test now is whether an individual or private corporation, assuming that he or it were obligated to discharge the governmental duty involved, would be liable *to the injured person* for a breach of that duty.

(7) In two cases there are dicta to the effect that the surrender of the sovereign immunity from liability is confined to acts of commission in the performance of a governmental function but that the immunity still persists as to acts of omission in the discharge of such a function. (*Murrain* v. *Wilson Line,* 270 App. Div. 372, 375–377 [1st Dept.], affd. 296 N. Y. 845; followed in *Landby* v. *New York, New Haven & Hartford R. R.,* 278 App. Div. 965, 1026 [2d Dept.], motion for leave to appeal denied, 303 N. Y. 1014.) In each of these cases the statement was unnecessary to the decision because the municipality there was properly exonerated on the sole ground that no duty was owing to the person who was injured by its failure to exercise its governmental police function.

(8) As already pointed out, however, the surrender of the sovereign immunity from liability with respect to a governmental function, is not limited to any acts of misfeasance or nonfeasance — commission or omission. The surrender is broad, general and unqualified. The only test of liability to be invoked now is that stated above, namely: Whether upon all the facts in the case an individual or private corporation would be liable for the breach if the governmental duty were imposed upon him or it. But, of course, here as in any other case, and whether

the duty involved be governmental or otherwise, it is always a fundamental prerequisite to liability that the duty be found to have been enjoined or undertaken for the protection or benefit of the injured person who is seeking to recover. (*Steitz* v. *City of Beacon*, 295 N. Y. 51, *supra*; *McCrink* v. *City of New York*, 296 N. Y. 99, *supra*; *Foley* v. *State of New York*, 294 N. Y. 275, affg. 267 App. Div. 1037, affg. 177 Misc. 443; *Dunham* v. *Village of Canisteo*, 303 N. Y. 498, *supra*; *Eastman* v. *State of New York*, 303 N. Y. 691; *Nuss* v. *State of New York*, 301 N. Y. 768, revg. 276 App. Div. 300, 303; *Countryman* v. *State of New York*, 277 N. Y. 586; *Flaherty* v. *State of New York*, 296 N. Y. 342, 346; *McPartland* v. *State of New York*, 277 App. Div. 103, 106, 107.)

It should be emphasized that by the foregoing statements it is intended merely to indicate that, assuming (as we must on this appeal) the truth of the opening statement and resolving in plaintiffs' favor the issues of fact raised by the pleadings, we are required (on the basis of such assumption) to hold that plaintiffs have a good cause of action and that it was error to dismiss the complaint on the opening. It is not intended to hold or even to intimate that plaintiffs after a trial shall be entitled to recover. Whether or not they should ultimately prevail will depend upon the proof adduced at the trial in support of the opening statement and in support of the issues tendered by the pleadings, upon the proof adduced in opposition thereto, and upon the credibility to be accorded to such proof.

The judgment should be reversed on the law and a new trial granted, with costs to appellants to abide the event.

CARSWELL, Acting P. J., MacCRATE, SCHMIDT and BELDOCK, JJ., concur; ADEL, J., dissents and votes to affirm.

Judgment reversed on the law and a new trial granted, with costs to appellants to abide the event.