ERNEST MAYER, as Administrator of the Estate of FRANK U. MAYER, Deceased, Respondent, *v.* TEMPLE PROPERTIES INCORPORATED et al., Appellants.

Argued October 11, 1954; decided November 18, 1954.

*John J. Cunneen* for appellants. I. The intestate was a trespasser *sui juris* to whom defendants were not liable for negligence. (*Carbone* v. *Mackchil Realty Corp.*, 296 N. Y. 154; *Mendelowitz* v. *Neisner*, 258 N. Y. 181; *Bergman* v. *Feitelowitz*, 278 N. Y. 620; *Basmajian* v. *Board of Educ. of City of N. Y.*, 211 App. Div. 347.) II. The intestate was guilty of contributory negligence as a matter of law and as a matter of fact. III. No case whatever was made against defendant Temple Properties Incorporated and the complaint should be dismissed as against it.

*Arthur Karger, Mortimer Sperling* and *Samuel Seligsohn* for respondent. I. The evidence overwhelmingly supports the Referee's decision finding defendants guilty of negligence. (*Le Roux* v. *State of New York*, 307 N. Y. 397; *Carbone* v. *Mackchil Realty Corp.*, 296 N. Y. 154; *Mendelowitz* v. *Neisner*, 258 N. Y. 181; *Bergman* v. *Feitelowitz*, 278 N. Y. 620; *Collentine* v. *City of New York*, 279 N. Y. 119; *Morse* v. *Buffalo Tank Corp.*, 280 N. Y. 110; *Walsh* v. *Fitchburg R. R. Co.*, 145 N. Y. 301; *Cusick* v. *Adams*, 115 N. Y. 55; *Runkel* v. *City of New York*, 282 App. Div. 173; *Basmajian* v. *Board of Educ. of City of N. Y.*, 211 App. Div. 347; *Kingsland* v. *Erie Co. Agric. Soc.*, 298 N. Y. 409; *French* v. *Central New York Power Corp.*, 275 App. Div. 238.) II. Decedent was not guilty of contributory negligence as a matter of law. (*Crapo* v. *City of Syracuse*, 183 N. Y. 395;

*Nicholson* v. *Greeley Square Hotel Co.,* 227 N. Y. 345; *Lindlots Realty Corp.* v. *County of Suffolk,* 278 N. Y. 45; *Bower's* v. *City Bank Farmers Trust Co.,* 282 N. Y. 442; *Barry* v. *New York Central & H. R. R. R. Co.,* 92 N. Y. 289; *Noseworthy* v. *City of New York,* 298 N. Y. 76.) III. Judgment was properly awarded against both defendants.

FROESSEL, J. Frank Mayer, a lad of twelve years, came to his death by falling into an opening, 55 feet deep, in a platform at the rear of premises owned by one of the defendants, and used in common by both. His father sues here as his administrator.

The platform in question abuts a 10-foot passageway in the rear of defendants' properties, which face on the west side of Broadway between 173rd and 174th Streets, New York City. The passageway runs the length of the block — 200 feet — and the middle 100 feet thereof are bounded by two wire mesh gates at the north and south ends, the aforesaid platform and building on the east, and a brick wall on the west, alongside of which are a public school and schoolyard.

It is undisputed that the premises are in a congested neighborhood, in which there are thousands of children. The platform, which was recessed in the rear of the building, was 3½ feet above the ground and was readily accessible by a stationary ladder. The opening therein started about 2 feet from the edge of the platform and was 4 feet square. It was used to raise and lower ash and rubbish cans. Two hinged steel doors were designed to cover the opening, each door measuring 2 by 4 feet, opening to the left and right respectively.

· Ample evidence was adduced from several witnesses that children frequently crawled under the gates and played on the platform; that on one occasion boys threw ash cans from the platform; that defendants' agents knew of the practice of children entering upon the passageway both inside and outside of the gated portion, and on occasions chased them, notwithstanding which the clearance between the bottoms of the gates and the concrete pavement, varying according to the evidence from 8½ inches to 12 inches, remained undisturbed.

At about 6:00 P.M. on March 22, 1949, decedent and his companion, Larry Berger, crawled under the north gate and entered upon the platform, as they had many times before. They walked

around the 4-foot-square opening, half of which was covered by one of the steel doors, but the door on the other half was open and the opening was covered by wood, which the police officer testified was a "jerry-built" arrangement. After remaining a short while, and as Larry was about to leave the platform, he heard the crashing of wood behind him, whereupon decedent disappeared. The only wood around after the accident was scattered about decedent's body at the bottom of the hole; the wood "was more or less like that of orange crate or a shipping crate".

Defendants' witness Smith conceded that the one steel door was open, but claimed that the space was largely covered by a calamine door, and that there were "a couple of flimsy pieces of board put there to cover the cracks, something like that down the boiler room". He also testified that a hoist protruded through the opening on that day, and indeed all winter, but had not been used that day; and that some time previously oil had been substituted for coal to heat the buildings. Larry Berger, on the other hand, testified that nothing was protruding through the opening; wood, as heretofore noted, had been placed over it.

The Referee before whom this case was tried, sitting without a jury, found that "there was known to have existed in the areaway opportunities which were utilized by the children of the neighborhood for passage through and playing for periods of time within the areaway. That entry was obtained by crawling under the gates, either on 173rd or 174th Street"; that at the time of the accident, "the hole or hoist area was open at least on one side * * * and that the covering was with wooden slats or boards, which were insufficient to hold the weight of the deceased"; and that "allowing the hoist space to remain open, constituted a dangerous condition which, under the circumstances of this case * * * places the responsibility * * * upon the defendants". Since these findings of fact are clearly supported by legally sufficient evidence, they are no longer open to challenge in view of the Appellate Division's affirmance of the judgment below (*Le Roux* v. *State of New York*, 307 N. Y. 397, 405; *Harrington* v. *Harrington*, 290 N. Y. 126, 130).

The primary contention of defendants is that decedent was a trespasser *sui juris* to whom they are not liable for negligence. Plaintiff is entitled to every favorable inference which may be had from the evidence, and in that view the Referee could find that he was at least a bare licensee. Whether we regard him thus or technically as a trespasser, it does not necessarily follow therefrom that defendants are not liable in negligence.

Here we have a dangerous instrumentality in the nature of a perilous trap affirmatively created by defendants by knowingly placing over a hole 55 feet deep, with an opening of 8 square feet and an inside area of 16 square feet, a frail wooden covering that could not sustain the weight of this twelve-year-old boy but precipitated him to the boiler room below. Moreover, this utterly insecure covering gave a deceptive appearance of safety, was pregnant with hazard, and the direct consequences were clearly foreseeable.

In *Collentine* v. *City of New York* (279 N. Y. 119), where a ten-year-old boy fell from the roof of a building, the trial court directed a verdict for defendant on the ground that the boy was a trespasser, and therefore defendant owed him no duty of care; the Appellate Division affirmed. We unanimously reversed, stating, among other things (p. 125): "In deciding what would be reasonable care under the circumstances, the jury were entitled to take into consideration the well-known propensities of children to climb about and play (*Parnell* v. *Holland Furnace Co.*, 234 App. Div. 567; affd., 260 N. Y. 604). That rule applies even though a child might be deemed technically a trespasser (*Connell* v. *Berland*, 223 App. Div. 234; affd., 248 N. Y. 641)."

In *Morse* v. *Buffalo Tank Corp.* (280 N. Y. 110, 115) we noted: "The general rule which has prevailed since the well-known turntable case (*Walsh* v. *Fitchburg R. R. Co.*, 145 N. Y. 301) is that the so-called doctrine of attractive nuisance does not apply in New York, and that the only duty which an owner of land owes to a trespasser or bare licensee is to abstain from affirmative acts of negligence or not to injure intentionally such person." In the *Walsh* case just cited, at page 307, we pointed out that the turntable "was not of the nature of a trap for the unwary". We spoke similarly with respect to the private bridge in *Cusick* v. *Adams* (115 N. Y. 55, 60).

In *Kingsland* v. *Erie Co. Agricultural Soc.* (298 N. Y. 409), where a boy was injured by the explosion of a bomb, we held (pp. 423–424): " The fact that the boys may have been trespassers on the fairgrounds is immaterial, since there was sufficient evidence that the article which caused the injury was ' inherently dangerous '. One who keeps an explosive substance is ' bound to the exercise of a high degree of care to so keep it as to prevent injury to others.' (*Travell* v. *Bannerman,* 174 N. Y. 47, 51.) The degree of care required is commensurate with the risk involved, depending upon such circumstances as the ' dangerous character of the material ' and its accessibility to others, particularly children whose presence should have been anticipated, regardless of whether or not they are trespassers.'' (See, also, *Runkel* v. *City of New York,* 282 App. Div. 173; *French* v. *Central New York Power Corp.,* 275 App. Div. 238; 277 App. Div. 1157.) Under the particular circumstances here disclosed, we think the courts below were correct in holding defendants responsible for this boy's death.

The cases relied upon by appellants (*Carbone* v. *Mackchil Realty Corp.,* 296 N. Y. 154; *Mendelowitz* v. *Neisner,* 258 N. Y. 181, and *Basmajian* v. *Board of Educ. of City of N. Y.,* 211 App. Div. 347) are clearly distinguishable. In those cases, *defective* conditions in the property or premises were permitted to continue until decay or mere failure to repair resulted in injuries to a trespasser or licensee; there were no acts of affirmative negligence nor deceptive traps created by the defendants such as in the instant case.

Moreover, in the *Carbone* case (*supra,* pp. 159, 160) we pointed out that the foundation walls were " far removed from lanes of public travel ''; that the " record is devoid of proof that at the time of the accident the defendants, by any affirmative act, changed conditions existing at the site of the foundation or created new perils there '', and that there was no evidence that the harm which befell plaintiffs " was due to active participation by the defendants in the event '', thus recognizing the materiality of such factors. Here we have abundant proof of affirmative action by defendants, who " changed conditions '' and " created new perils there '' by providing an insecure and deceptive covering over the platform opening. Nor do the facts

in *Bergman* v. *Feitelowitz* (278 N. Y. 620) in anywise resemble those in the case now before us.

In the state of this record, we must assume that defendants had knowledge of the '' common occurrence·'' of children in this congested neighborhood adjoining a public school, crawling under the gates to play, to retrieve a ball or to linger awhile, and that this practice had been followed for a long time. Despite such knowledge, the only space affording entry, through the clearance beneath the gates, was left open. Once within the gates, the platform was easily accessible to children. Under these circumstances, to cover a hole, more than half as deep as the gated passageway, with '' flimsy '' pieces of wood that quickly crumbled under the feet of the infant decedent, plunging him to his death in the boiler room far below, constitutes an affirmative creation of a situation pregnant with the greatest danger to life or limb, and a deceptive trap to the unwary, as perilous as an explosive bomb, highly inflammable material, a spring gun, or kindred devices. The bringing about of an inherently hazardous situation, as we had in this case, is tantamount to a reckless disregard of the safety of human life equivalent to willfulness, and an utter heedlessness of care commensurate with the risk involved, the consequences of which may well have been anticipated.

The contributory negligence of decedent, the burden of proving which rested upon defendants, was clearly a question of fact, which is now beyond our review. Nor is there any merit in the claim that no case has been made out against Temple Properties Incorporated. While it did not own the particular building here involved, it concededly had an easement of use in the heating system and appurtenances, used the platform and hoist in common with its codefendant, and shared with it inspection of the boiler room as well as the gates in the passageway.

The judgment appealed from should be affirmed, with costs.

LEWIS, Ch. J., CONWAY and DESMOND, JJ., concur with FROESSEL, J.; DYE and VAN VOORHIS, JJ., vote to reverse and dismiss the complaint upon the ground that the appellants are not shown to have violated a duty owing to a trespasser (*Carbone* v. *Mackchil Realty Corp.,* 296 N. Y. 154) ; FULD, J., taking no part.

Judgment affirmed.