Soileppi, J.
The present appeal is from a judgment in favor of plaintiffs in an action to recover damages for personal injuries.
On May 16,1960, at about 4:30 p.m., the infant plaintiff (herein referred to as plaintiff), then a boy 10 years old, was injured when he fell from an open window on the second floor of a vacant two-story wooden frame house owned by defendant. The subject premises, located on Trinity Avenue in the Bronx, was situated in a row of five or six other vacant houses also owned by defendant. These houses, which had been vacant for 60 or more days prior to the accident herein, were to be demolished. The rear of said houses was adjacent to St. Mary’s Park, a public park and playground, although separated therefrom by two iron fences and a sidewalk. Trinity Avenue, the street in front, led to one of the park’s entrances which was immediately beyond the houses.
At the trial various witnesses testified that the vacant house involved herein was somewhat dilapidated. They also declared that on the day of the accident the windows were without glass panes and otherwise not covered; the doors were either open or missing. An employee of defendant charged with inspecting the premises and supervising the security thereof testified that when the house in question was vacated the doors and windows were closed and locked and the premises otherwise secured. He *404 declared he knew that, thereafter, children and other trespassers had been in and about the premises. He further testified that he inspected the vacant house almost every day, and found at various times that the doors and windows had been broken open, but that on each of these occasions — specifically March 31, April 18 and April 26 of 1960 — the premises were resecured by boarding over the doors and windows. This witness stated that on the morning of May 16, 1960 he inspected this vacant house and found that it was secured.
According to plaintiff’s testimony, on the day of the accident he and a companion passed these vacant houses on their way to St. Mary’s Park where they were going to play ball. While in the park, some bigger boys took the ball and glove plaintiff was playing with and ran out of the park onto Trinity Avenue. Plaintiff gave chase. The bigger boys stopped in front of the vacant house involved herein and were throwing the glove around. As plaintiff came upon them, one of the boys threw the glove through an open window on the second floor. Plaintiff entered the house through an open door to retrieve the glove. He ascended the stairs to the second floor and entered a room. While in the room, plaster started falling from the ceiling. Plaintiff backed away until he reached an open window, whereupon he sat on the sill; as plaster continued to fall, he lost Ms balance and fell.
Although defendant may have known that persons including children were entering onto the property, such knowledge did not constitute an invitation to such persons to so continue (Carbone v. Mackchil Realty Corp., 296 N. Y. 154; Mendelowitz v. Neisner, 258 N. Y. 181). There can be no doubt, therefore, that plaintiff, in entering the vacant house to retrieve his glove, was a trespasser as a matter of law (Serapiglia v. Santini Bros., 306 N. Y. 877; Calore v. Domnitch, 5 Misc 2d 895).
The question presented by this appeal, then, is whether defendant violated any duty owed to plaintiff, an infant trespasser.
■ The resolution of this question necessarily centers on an analysis of Runkel v. City of Neto York (282 App. Div. 173; [.Runkel v. Homelsky], 286 App. Div. 1101, affd. 3 N Y 2d 857), which was concerned with certain infants who had been injured when a vacant three-story multiple dwelling in which they were trespassing collapsed.
*405 Under the common-law authorities in this State an owner’s only responsibility with respect to trespassers, including infants (see, e.g., Morse v. Buffalo Tank Corp., 280 N. Y. 110), is to refrain from inflicting willful, wanton or intentional injuries (Carbone v. Mackchil Realty Corp., 296 N. Y. 154, 158-159, supra; Mendelowitz v. Neisner, supra). The affirmative creation of a trap (Mayer v. Temple Props., 307 N. Y. 559) or the maintenance of an inherently dangerous article without exercising a high degree of care to prevent foreseeable injury to others (Kingsland v. Erie County Agric. Soc., 298 N. Y. 409) has been deemed the equivalent of a willful, wanton or intentional act (Mayer v. Temple Props., 307 N. Y. 559, 565, supra; Brzostowski v. Coca-Cola Bottling Co., 16 A D 2d 196, 200-201).
In Runkel the court held that an “ abandoned open structure which is so rotted and dilapidated that it is in imminent danger of collapse may be said to constitute a trap or an ‘ inherently dangerous ’ instrumentality ”, thereby casting the owner in liability if he fails to prevent foreseeable injury to others, including trespassers (282 App. Div. 173, 176, supra).
The case at bar is readily distinguishable. While there can be no doubt that the vacant house was in a state of disrepair, there is no proof in the record to show that it was so rotted and decayed as to have been in imminent danger of collapse and thus a trap or an inherently dangerous structure. The defective condition of the house here resulted, as it were, from a failure to repair; therefore, defendant owner is not liable to the trespassing plaintiff for injuries sustained by reason thereof (Mayer v. Temple Props., supra, p. 564; Mendelowitz v. Neisner, supra, p. 184; Castella v. Caristo Constr. Corp., 12 A D 2d 605, affd. 10 N Y 2d 945; Mendez v. Goroff, 25 Misc 2d 1013, affd. 13 A D 2d 705).
The decision in Runkel set forth an alternate theory upon which to predicate liability. Belying on the Administrative Code of the City of New York (§§ 564U15.0, 564-17.0, C26-193.0, C26-194.0, C26-197.0) and the Multiple Dwelling Law (§ 309, subd. 1, par. a; subd. 2, pars, a, b, c, d), the court held that an abandoned open multiple dwelling in imminent danger of collapse constituted a public nuisance, the continued maintenance of which violated a statutory duty to abate it, thereby rendering the owner liable for injuries resulting therefrom (282 App. Div. 173, 177, supra).
*406 In the instant case, plaintiff was not injured by the collapse of any part of the building as in Runkel {supra), but only as the result of a fall from an open window. Consequently, certain of the statutes involved in Runkel (see, e.g., Administrative Code of City of New York, §§ C26-194.0, C26-195.0, 026-201.0; Multiple Dwelling Law, § 309, subd. 2, pars, a, b, c, d) which required an owner to remove a structurally defective building have no relation to the facts herein. Section C26-193.0 of the Administrative Code of the City of New York, however, provides in pertinent part: £ ‘ Any structure * * * that from any cause may at any time become * * * dangerous * * * shall be taken down and removed or made safe and secure. * * * Any vacant building unguarded or open at door or window shall be deemed dangerous ’ ’. (Emphasis supplied.) In addition, a vacant building as therein described comes within the definition of a public nuisance as found in section 564-15.0 of the Administrative Code of the City of New York: ££ The word £ nuisance ’, shall be held to embrace public nuisance, as known at common law or in equity jurisprudence; whatever is dangerous ”. (Emphasis supplied.)
The Runkel determination, then, has some bearing on this case, but it did no more than hold that the afore-mentioned statutory provisions defined, in the interest of the general public, the degree of care to be exercised under specified circumstances ; it did not decide that their violation created a liability per se.
Whether the violation of a statute or ordinance is to be deemed to constitute liability per se (absent an appropriate express provision) depends upon whether a new liability is impliedly created for the disregard of a duty imposed for the special benefit of a particular group or class of persons (Schmidt v. Merchants Desp. Transp. Co., 270 N. Y. 287, 303-306; see, also, Lorberblatt v. Gerst, 10 N Y 2d 244, 248; De Caprio v. New York Cent. R. R. Co., 231 N. Y. 94, 97; Amberg v. Kinley, 214 N. Y. 531, 535). At the common law, a tumbledown house in so ruinous a condition as to constitute a danger to the public was deemed a nuisance, though a nuisance dependent upon negligence, rendering the owner liable for injuries caused thereby (McFarlane v. City of Niagara Falls, 247 N. Y. 340, 343-344; Timlin v. Standard Oil Co., 126 N. Y. 514). Further *407 more, a reading of the provisions of sections 564-15.0 and C26-193.0 of the Administrative Code of the City of New York demonstrates that they merely define, in the interest of the general public, the standard of care to be exercised with regard to vacant buildings. There is no language contained therein which would indicate an intention to benefit and protect, as a group or class, children who trespass, or other trespassers (such as homeless people or others entering the building for the purpose of dismantling and stealing fixtures and materials contained therein or who would use the premises for unlawful purposes) (see, generally, Lorberblatt v. Gerst, supra).
Pursuant to the appropriate provisions of the Administrative Code of the City of New York, any vacant building “ unguarded or open at door or window ” is dangerous and thus constitutes a nuisance. By definition, a nuisance of this nature is a dangerous condition, and, therefore, may be deemed an inherently dangerous instrumentality (see Timlin v. Standard Oil Co., supra). As a consequence, a property owner, who with actual or constructive knowledge maintains such a nuisance, is liable to a person, even though he be a trespasser, who is injured because of the maintenance thereof. In order to escape liability, the owner must ameliorate the danger by providing adequate safeguards to avoid injuring others. This, then, in effect would require an abatement of the nuisance (see, generally, Pharm v. Lituchy, 283 N. Y. 130; Timlin v. Standard Oil Co., supra).
We do not believe, however, that the duty to secure the premises herein was absolute. “ In the striving after safety, [an] owner * # * is not required to go beyond the bounds of what is practicable and reasonable ”. (Caspersen v. La Sala Bros., 253 N. Y. 491, 495; see, also, Timlin v. Standard Oil Co., supra, pp. 523-524; Odell v. Solomon, 99 N. Y. 635.) Thus, in this case, the duty to provide adequate safeguards to avoid injuring others would have been fulfilled if the doors and windows had been adequately secured to prevent access, together with reasonable inspections to insure the maintenance of said security.
It may be, as the case was developed herein, that defendant did in fact violate a duty owed to this plaintiff. There is substantial evidence, however, to indicate that defendant secured the house when it first became vacant and thereafter conducted *408 almost daily inspections, and resecured the premises on three separate occasions. Whether defendant did perform these duties was a question of fact for the jury. However, the Trial Judge failed to instruct the jury that if they believed the evidence concerning the security of the building they were to find for defendant. Because of this failure, the jury may very well have found defendant liable merely because at the time of the accident the doors and windows on the house were open, without considering whether defendant had fulfilled its duty prescribed by statute.
Accordingly, the judgment should be reversed and a new trial granted, with costs to abide the event.