Bergan, J.
Defendant was engaged in the manufacture of paint and varnish in a Yonkers residential area. Adjoining its plant was an open yard, unfenced on one side. On the outer wall of the plant facing the yard were a number of fill pipes available to tank trucks supplying the plant with fluids for paint and varnish manufacture. Dripping of the fluid from some of these pipes was caught in cans placed by defendant on the ground. The fluid which drained into these cans was a form of paint solvent. It was white in appearance, looked like water, but was described by a chemist as “ a flammable liquid commonly known as mineral spirits ” with a flash point at 103 degrees Fahrenheit and both “ combustible ” and “ explosive ”. Since the yard was not entirely enclosed, and was in a residential area, children played there and the defendant had knowledge they played there.
On October 29, 1961 the infant plaintiff, Matthew Patterson, then 12, and his younger brother John, 9, came onto the lot by climbing over a wall opposite the building. Matthew picked up a drip pail containing fluid that looked like water from under one of the pipes and carried it back toward the wall on the other side of the yard. As he did so he spilled some of it on his clothing.
He then lighted a fire and, playing “ fireman ”, poured some of the fluid on the fire which then flared up. The flame caught onto his clothes where the fluid had spilled. He was severely burned.
This outline of events assumes the most favorable view of the facts in support of plaintiffs ’ action for damages, a view that must be taken in this court upon appeal from the dismissal of the complaint at the end of proof for legal insufficiency by the trial court, affirmed at the Appellate Division. Two Justices dissenting in that court were of opinion a case prima facie had been made out by plaintiffs.
*450 Respondent argues in this court that the relevant New York decisions bar the cause of action asserted and that the complaint was properly dismissed without sending the case to the jury. There is some stress placed by defendant in its argument that “ since infant plaintiff was concededly a trespasser, as matter of law” the cases which might otherwise support plaintiffs’ argument cannot be relied on validly to sustain it.
There are, indeed, New York cases which, treating a child injured by a dangerous condition in a place to which he was without legal right of access, as a trespasser, have denied recovery on this ground alone. The turntable case, Walsh v. Fitchburg R. R. Co. (145 N. Y. 301 [1895]), is a protein example and was followed literally in Flaherty v. Metro Stas. (235 N. Y. 605 [1923]) and Morse v. Buffalo Tank Corp. (280 N. Y. 110 [1939]).
But as a rigid concept by which all such cases are to be at once dismissed, the “ trespass ” theory applied to children injured by dangerous conditions on land of owners having notice of the presence of children and the existence of danger has lost force as the law in New York has developed.
This is to be seen in cases of injury by dangerous static conditions on land and by volatile substances dangerous in themselves, since in this trespass aspect—the right to get to the danger—the same rule governs both situations.
The present direction of the New York ease law in this area is readily demonstrable. First, as to nonvolatile danger. In 1938, the court decided Collentine v. City of New York (279 N. Y. 119). There a boy climbed onto the roof of a building in a park which was closed to the public. He had no legal right to be there. He fell from the roof when he tripped over an iron bar. The roof had once been open to the public but was then closed and the main access barricaded. However, there was proof access could be had by another means. A case was held made out based on the dangerous condition of the roof.
Nor has public ownership of premises been deemed decisive on the rule of liability. A similar rule was applied to entirely private premises in 1954 in Mayer v. Temple Props. (307 N. Y. 559) where liability was sustained when a 12-year-old boy crawled under a gate to gain access to defendant’s property *451 where he had no legal right to be and was killed when wooden slats placed over an opening in a platform gave way when he walked on them.
Even a broken and twisted railing on a public stairway, manifestly not designed or intended for climbing, was held a sufficient ground for municipal liability when a child, climbing on it, was injured (Levine v. City of New York, 309 N. Y. 88 [1955]). And in Soto v. City of New York (9 N Y 2d 683 [1961]), the roof of a condemned building had an unfastened door which made it possible for children to reach the roof. A loose brick from the chimney caused a child to fall. It was held there was a case prima facie.
It will be observed that in each of these cases the injured child was in greater or lesser degree a “ trespasser ” in the classic sense that he had no right to be there, but this alone was not held a sufficient ground to bar recovery. Thus the court has moved away from an automatic and literal application of the trespass doctrine to the children injured by dangerous conditions on land.
The situation as to dangerous volatile substances has, of course, an added element: that the active intervention of the child, usually the ignition of the substance, is itself ingredient to the injury. In addition to the “ trespass ” (wrong) in getting to the substance, there has been an additional trespass or wrong in activating it dangerously. But this has made no difference in the decisions.
In Travell v. Bannerman (174 N. Y. 47 [1903]), children went on the private, but open, lot of the defendant’s gun factory and took away black material resembling asphalt and containing brass. In attempting to extract the brass the black material exploded, a child was injured, and a recovery was allowed. Defendant, in Kingsland v. Erie County Agric. Soc. (298 N. Y. 409 [1949]), stored fireworks in an enclosed and fenced-in place. Boys climbed over the fence and stole some of the fireworks, taking them off the premises. One of the boys was later injured when a bomb exploded. A case prima facie was held made out.
When a substance, somewhat similar to that involved here and used in connection with painting, was stored in a recessed room under an archway in Brooklyn Bridge, to which children *452 were able to gain access, a case prima facie was held to be made out when a child lighted a match causing an explosion (Carradine v. City of New York, 13 N Y 2d 291 [1963]).
In none of these cases was there a showing of any legal right in the children either of access to the place or of access to the material which caused injury.
In Parnell v. Holland Furnace Co. (260 N. Y. 604 [1932], affg. 234 App. Div. 567), an employee of defendant left his old and then unused Ford car in an open space utilized by defendant, adjoining defendant’s plant. The space was not exclusively controlled by defendant. There was gasoline in the car tank. Children removed a properly secured cap from the tank and caused an explosion. A case was held made out against defendant, and although right of access to the land by another tenant made it possible to say, as Sears, P. J., did for the Appellate Division, that the children playing in the space were not trespassers by being there, they had no right to open up the gas tank and thus expose the gasoline to explosion, as Crane, J., noted in dissent in this court (pp. 606, 608). Still a case was held made out against defendant.
A somewhat similar situation existed in the most recent case in this court (Burdeau v. Burdeau, 21 N Y 2d 677), where the child, although not literally a trespasser on the defendant’s land itself, nevertheless ignited a can of gasoline left near defendant’s house and was injured. A judgment for plaintiff was sustained.
Thus the cases which would suggest a dismissal of the .complaint in the present action have not been followed and are not controlling. The most important of them is Morse v. Buffalo Tank Corp. (280 N. Y. 110, decided in 1939 and cited above). A drum of gasoline was kept by defendant in its open yard. Some of this was taken by boys and ignited. Plaintiff, 10 years old, running by the flame, was injured. It was held defendant was not liable, Lehman and Loughran, JJ., dissenting.
The majority opinion distinguished Parnell on the difference in the cases on the right of access to the land; and distinguished Bannerman on the difference between gasoline and “ inherently dangerous materials ” (p. 116). To read the decision made 10 years later (1949) in Erie County Agric. Soc. is to see the rule as it has evolved that “trespass” does not alone bar *453 recovery, given other essential conditions; and to read Carradine, Burdeau and, indeed, Parnell, is to see that volatility of the material has been treated as a matter of degree and hence as a question of fact. Nor does Flaherty v. Metro Stas., cited above and decided in 1923, lead to a different end.
The main body of decisions in this court instructs us that the rule today is that if the owner of land leaves it open and accessible to children; if he knows that children use it for play; and if he leaves accessible to them highly volatile substances, a case prima facie is made out if a child is thus injured.
The order should be reversed; the motion to dismiss denied, and a new trial ordered, with costs to abide the event.