Chief Judge Breitel (concurring).
I concur in the result and vote to reverse the order of the Appellate Division and order a new trial for the following reasons:
Wholesale abandonment of the common-law rules governing the liability of a possessor of property to one who has sustained injuries on his property is unnecessary to justify plaintiff’s recovery. The common law is served best by changes in its doctrine based on the progression of actual cases and a process of evolution which does not disrupt the essential pragmatism of the common law by excessive devotion to the promulgation of abstract ideologies (see concurring opn in Basso v Miller, 40 NY2d 233, decided herewith). Instead, under the familiar common-law doctrine of "attractive nuisance”, better termed the "child trespasser” doctrine, often disavowed but fully applicable in this State, defendant is liable for the death of plaintiff’s 12-year-old child (for a remarkably similar case, applying the "child trespasser” doctrine as restated in Restatement, Torts 2d, § 339, and permitting recovery, see McGill v United States, 200 F2d 873, 875-876 [Goodrich, J.]).
Defendant Parnossa owned a parcel of land in the City of Newburgh. Once used by a prior owner as a coal storage yard, this business had been abandoned since 1965 and the land was held by defendant purely for speculative purposes. On the land were a number of low buildings and four 80-foot-tall coal *928 silos, spaced two feet apart, and joined at their tops by a connecting roof.
The silos were located about five feet from a path across the property which ran from a break in the chain-link fence adjacent to a boy’s club. The path was commonly used by children as a "short cut” to school. Children regularly used defendant’s land as a playground and some of them would climb on the silos. Defendant’s vice-president admittedly knew that children often played on the land. Although "danger” signs were posted on the silos, no caretaker or guard was ever on duty.
On March 14, 1971, decedent Jeffrey, a 12 year old, and a number of his friends, went to play on defendant’s property. Jeffrey climbed up the outside of the silos, using the protruding steel bands wrapped around them as supports. Some of the other boys climbed to the top by means of an interior stairway. Once at the top of the silo, Jeffrey went inside and walked or ran on an interior catwalk not maintained in good repair and covered with pigeon excreta. At some point of his activity, for reasons unknown, the 12-year-old boy fell approximately 80 feet from the catwalk to his death.
Jeffrey Barker was concededly a "trespasser” on defendant’s property. A trespasser is one who enters upon or remains on property without privilege or the consent of the possessor (Vaughan v Transit Development Co., 222 NY 79, 82; Restatement, Torts 2d, § 329). Generally, a possessor has a duty to refrain only from inflicting "willful, wanton or intentional” injury upon a trespasser (see, e.g., Beauchamp v New York City Housing Auth., 12 NY2d 400, 405; Lo Casto v Long Is. R. R. Co., 6 NY2d 470, 474). Maintenance of an artificially created, inherently dangerous but deceptively innocent instrumentality or condition, commonly referred to as a "trap”, is equated to a willful, wanton or intentional act (Beauchamp v New York City Housing Auth., 12 NY2d 400, 405, supra; Mayer v Temple Props., 307 NY 559, 563).
It has been repeatedly stated in this State that a possessor’s duty is the same with respect to both adult and child trespassers (Beauchamp v New York City Housing Auth., 12 NY2d 400, 405, supra; Carbone v Mackchil Realty Corp., 296 NY 154, 159, and cases cited). In fact, however, the rule has not applied indiscriminately to children as it would be to adults.
It has been recognized through a long line of cases that, *929 because of the special propensities of children and the prevailing social policy of protecting them from harm, under appropriate circumstances the status of a child as a trespasser will not preclude liability for negligently inflicted injury (see Martinez v Kaufman-Kane Realty Co., 34 NY2d 819, 821; Patterson v Proctor Paint & Varnish Co., 21 NY2d 447, 453; Collentine v City of New York, 279 NY 119, 125; Prosser, Torts [4th ed], § 59, p 366; cf. Mevorah v Garyn, 35 NY2d 934, 936, affg on dissenting memorandum at App Div 35 AD2d 823; Mayer v Temple Props., 307 NY 559, 563, 565, supra; Kingsland v Erie County Agric. Soc., 298 NY 409, 423-424; Bowers v City Bank Farmers Trust Co., 282 NY 442, 446-447).
To avoid outright repudiation of older cases declaring the so-called "attractive nuisance” doctrine inapplicable in this State, many of these holdings achieved the result by expanding the traditional concept of a "trap” (see Mevorah v Garyn, supra; Martinez v Kaufman-Kane Realty Co., supra; Runkel v City of New York, 282 App Div 173, 176; Prosser, op. cit., at p 365, n 40; cf., generally, Brzostowski v Coca-Cola Bottling Co., 16 AD2d 196, 199-201 [Halpern, J.]). In light of this common-law development, it is appropriate to recognize that the so-called "attractive nuisance”, or better, the "child trespasser” doctrine has been and is being applied in this State, as it is in the overwhelming majority of jurisdictions in this Country (see Martinez v Kaufman-Kane Realty Co., 34 NY2d 819, 821, supra; Patterson v Proctor Paint & Varnish Co., 21 NY2d 447, 453, supra; Prosser, op. cit., § 59, at p 365).
Thus, as formulated by Restatement, Torts 2d (§ 339):
"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
"(d) the utility to the possessor of maintaining the condition *930 and the burden of eliminating the danger are slight as compared with the risk to children involved, and
"(e) the possesor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.”
The "attractive nuisance” doctrine is unfortunately misnamed. There need be no luring of the child onto the property by an "attractive” condition of the land (see Prosser, op. cit., at pp 365-368; 2 Harper and James, Torts, § 27.5, at p 1147). Instead, as stated in the Restatement (§ 339, Comment b, at p 198): "[T]he basis of the rule is merely the ordinary negligence basis of a duty of reasonable care not to inflict foreseeable harm on another, and that the fact that the child is a trespasser is merely one of the facts to be taken into consideration. The result is a limited obligation to the child, falling short of a duty to prevent all foreseeable harm to him, but requiring reasonable care as to those conditions against which he may be expected to be unable to protect himself’ (accord Prosser, op. cit., at p 366).
Of course, recognition that the "child trespasser” doctrine is only a somewhat restricted application of ordinary negligence principles obviates the need to sweep away entirely the common-law rules governing the liability of a possessor of property. Instead, application of the common law "child trespasser” doctrine would permit plaintiff to recover in this case. Indeed, this result is illustrative of the fact that in most of the so-called "status” cases, there is no disagreement over the scope of the possessor’s duty but only a logomachy over the nomenclature to be applied (see concurring opn in Basso v Miller, 40 NY2d 233, supra, decided herewith).
Thus, under the "child trespasser” doctrine it is not dispositive that the young boy was a trespasser on the property. The child’s status as a trespasser does, however, bear on whether his presence was foreseeable. Defendant had reason to know that children were likely to trespass on the property. Children regularly used the property as a playground and at times climbed on the silos. One of defendant’s principals admittedly knew that children played on the property. These past trespasses were sufficient to cause a reasonable man to believe that future trespasses by children would occur (see Prosser, op. cit, at pp 368-369).
Defendant also had reason to know, and thus could reasonably foresee, that the silos would involve a significant risk of death or serious injury to the children. The property was not *931 in productive use and, for all practical purposes, abandoned. There was a break in the chain-link fence and access to the property was easy. The 80-foot-tall silos and their interior catwalks were not maintained in a proper state of repair. No caretaker was on duty to prevent the children from playing on the property. Under the circumstances, it was a question of fact, properly submitted to the jury, whether the silos created an "unreasonable” risk of death or serious bodily harm to the children playing on them.
On this analysis it is unnecessary to determine the exact "cause” of Jeffrey’s death, that is, whether he tripped on one of the loose boards, slipped on the pigeon excreta, lost his balance because of the height, or even was pushed by one of his playmates. It is enough that the property owner should have realized that the silo and the catwalk would involve an unreasonable risk of death or serious bodily injury to a trespassing child and that the child was injured as a result of these conditions on the property (Restatement, Torts 2d, § 339, subd b). The silo in its placement and condition was the proximate cause of the accident, and with respect to this child or any child, it was foreseeable that any one or more of the likely causes would inevitably maim or destroy this or some other child who came onto the premises. Once children were permitted to frolic on the catwalk, one or more would fall 80 feet from tripping on a defective board, slipping on pigeon excreta, becoming "dizzy” from the height, or being pushed by a playmate. The particular precipitating event could hardly be more immaterial. The proximate cause was the height of the unprotected and unmaintained catwalk, abetted by one or more of the inevitable concurring causes.
There is no fixed age at which a child is presumed to realize or appreciate the risk involved in "intermeddling” with an artificial condition on land (see Restatement, Torts 2d, § 339, Comment j, at p 203; Attractive Nuisance—Age—Mentality, Ann., 16 ALR3d 25, 46-47, 74). The maturity, experience, and judgment of a particular child is ordinarily a question of fact. Under the circumstances, it was for the jury to decide whether the 12-year-old boy should have realized the dangers of playing in and atop the silos.
Moreover, even under prior analysis, where a dangerous condition exists on private property adjacent to the public highway, a mere technical trespass by a child will not prevent recovery (see Martinez v Kaufman-Kane Realty Co., 34 NY2d *932 819, 821, supra; Hynes v New York Cent R. R. Co., 231 NY 229, 233-235 [Cardozo, J.]; 46 NY Jur, Premises Liability, § 36, p 100). It is significant that a commonly used path traversed defendant’s property. The dangerous silos were only five feet from this path, a path which children frequently used.
Since the property was not in productive use, but was held only for speculative purposes, and the silos served no useful purpose, a balancing of the utility of the dangerous condition against the risk of serious harm to children playing on the property must be struck in favor of the child. This is especially true when it is considered that repair of the fence, the posting of a guard, a secure boarding up of the silos, or similar precautions might have prevented access (see Restatement, Torts 2d, § 339, Comment n, at pp 205-206). The mere posting of signs was not enough (Restatement, Torts 2d, Comment o, at pp 206-207).
Consequently, since defendant took no action other than to post signs, it may not be said, as a matter of law, that defendant exercised reasonable care to eliminate the danger or otherwise protect the children. Thus, the Appellate Division improperly dismissed the complaint.
As the Appellate Division reversed on the law and the facts;, a new trial must be ordered (see Stevens v Hulse, 263 NY 421; Cohen and Karger, Powers of the New York Court of Appeals, § 174, pp 660-661).
Accordingly, I concur in the result and vote to reverse the order of the Appellate Division and order a new trial.
Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur; Chief Judge Breitel concurs in result in a separate opinion in which Judge Jasen concurs.
Order reversed and a new trial granted, with costs to abide the event, in a memorandum.