Chief Judge Breitel
(concurring). I concur in the result reached by the majority but for different reasons.
Abandoning all the rules governing liability of a possessor to one injured on his property, rules evolved progressively in the common-law process over the past 200 years, the court substitutes an amorphous "single standard” of "reasonable care under the circumstances”. Apart from being unnecessary to decide this case, the substitution is deceptively simple; it raises more problems than it solves. Of course, any generality, if broad enough, will cover all cases, but no guidance is offered courts or juries for particular cases or classes of cases. Moreover, by sweeping generalization the court overreacts to the conceded need for re-evaluation of the rules. While still vulnerable to criticism and deserving of modification to adapt to social and economic change, the rules in this State have produced both progressive evolution and a predictive stability. Finally, and perhaps most important, the majority would delegate to the jury the responsibility to determine the applicable social policy, thus abdicating the judicial role where not controlled by legislative primacy in determining public policy.
Under traditional common-law analysis, in actions based on negligence, a possessor’s duty to one on his property is measured by the status of that person, namely, by the circum *244 stances under which he came or remained on the property. The injured person is classified as trespasser, licensee or invitee, that is, how did he come there or what was he doing there—burglar, social guest, or one on the possessor’s business, or the like.
Generally, a trespasser is one who enters upon or remains on property without privilege or the consent of the owner (Vaughan v Transit Development Co., 222 NY 79, 82; Restatement, Torts 2d, § 329). A possessor has a duty to refrain only from inflicting "willful, wanton or intentional injuries” upon a trespasser (see, e.g., Beauchamp v New York City Housing Auth., 12 NY2d 400, 405; Lo Casto v Long Is. R. R. Co., 6 NY2d 470, 474). Maintenance of an artificially created, inherently dangerous but deceptively innocent instrumentality or condition, commonly referred to as a "trap”, is equated to a willful, wanton or intentional act (see Beauchamp v New York City Housing Auth., supra, at p 405; Mayer v Temple Props., 307 NY 559, 563).
A licensee is one who is permitted to enter upon or remain on property with the possessor’s consent, express or implied (see Vaughan v Transit Development Co., 222 NY 79, 82, supra; Restatement, Torts 2d, § 330; Prosser, Torts [4th ed], § 60, at p 376). The duty of care owed to a licensee is sometimes said to be much the same as that owed to a trespasser, that is, to refrain from inflicting willful, wanton or intentional injury, or maintaining a "trap” (see Lo Casto v Long Is. R. R. Co., 6 NY2d 470, 474, supra; Vaughan v Transit Development Co., 222 NY 79, 83, supra; Prosser, op. cit., § 60, at p 379). Other cases have, however, imposed a broader duty which includes the obligation to refrain from committing acts of "affirmative negligence” and to exercise reasonable care to disclose dangerous defects known to the possessor and unlikely to be discovered by the licensee (see, e.g., Merriman v Baker, 34 NY2d 330, 334-335; Krause v Alper, 4 NY2d 518, 521; Higgins v Mason, 255 NY 104, 109; Restatement, Torts 2d, §§ 341, 342). This seemingly broader duty is in effect an expansion of the concepts of "wanton” or "willful” conduct or a "trap” (see Brzostowski v Coca-Cola Bottling Co., 16 AD2d 196, 199; Prosser, op. cit, at p 379).
An "invitee” is subdivided into two categories, a public invitee and a business visitor (see Restatement, Torts 2d, § 332, subd [1]). A public invitee is one who, as a member of the public, is invited to enter or remain on property which is *245 held open to the public (Restatement, Torts 2d, § 332, subd [2]; see Haefeli v Woodrich Eng. Co., 255 NY 442, 448; Prosser, op. cit, § 61, at pp 386-389; 46 NY Jur, Premises Liability, § 54, pp 153-154). A business visitor is one who is invited to remain on property for a purpose directly or indirectly connected with business dealings with the possessor of the property (Restatement, Torts 2d, § 332, subd [3]; Meiers v Koch Brewery, 229 NY 10, 13-14).
The duty owed to an invitee is to use due care to keep the property in a reasonably safe condition so that invitees will not unnecessarily be exposed to danger (see Haefeli v Woodrich Eng. Co., 255 NY 442, 448, supra; Restatement, Torts 2d, §§ 341A, 343, 343A; Prosser, op. cit, § 61, at pp 392-394). This includes an obligation to warn an invitee of any hidden danger if the possessor is unable to maintain the property in a reasonably safe condition (see Schwab v Rubel Corp., 286 NY 525, 529-530; Prosser, op. cit, at p 393).
As Prosser has noted, the three categories "make out, as a general pattern, a rough sliding scale, by which, as the legal status of the visitor improves, the possessor of the land owes him more of an obligation of protection” (Prosser, op. cit, § 58, at p 357). The sliding scale thus reflects the foreseeability of injuries to others, the obligation of the injured person to foresee the precautions likely to be taken for his benefit, and the varying economic burdens justifiably placed on the possessor to protect those on his property against harm. Because they are elaborations of rules of law they are given to the fact finders to guide them in applying the social policy embraced in the rules to the facts as they find them.
The roots of the common-law principles largely antedate the development of modern negligence law (see Marsh, History and Comparative Law of Invitees, Licensees and Trespassers, 69 LQ Rev 182, 184; Hughes, Duties to Trespassers: A Comparative Survey and Revaluation, 68 Yale LJ 633, 694). In nineteenth century England and America, when the economy was largely agrarian and land formed the principal basis of wealth, it was considered socially desirable policy to allow a landowner to use and exploit his land as he saw fit, without need for vigilance or protection for those who came upon the property without privilege or consent (see Fisher v Clark, 41 Barb 329, 330-331; 2 Harper and James, Torts, § 27.1, p 1432; Bohlen, Fifty Years of Torts, 50 Harv L Rev 725, 735). Thus, rigid rules then virtually immunizing the landowner from *246 liability for injuries sustained on his property were formulated to effectuate that policy (see, e.g., Addie & Sons v Dumbreck [1929], AC 358, 371; Prosser, op. tit., § 58, p 357).
As the economy shifted from an agrarian to an industrial base and personalty replaced realty as the principal basis of wealth, a corresponding change in social policy, one less favorable to the landowner or possessor occurred. No longer does the policy of unrestricted freedom to use one’s land, which has usually meant no more than a desire to be free of the burden and expense of taking precautions, inevitably outweigh considerations of human safety (see Bohlen, Fifty Years of Torts, 50 Harv L Rev, at p 736).
The law, of course, has not been insensitive to this shift in social policy. Instead, the courts, through the common-law process, have progressively struck a better balance between the competing social policies. This has been done on a case-by-case basis by eliminating the common-law distinctions in the case of children, by broadening the more favored categories to include persons who in the past would not have been included, or by expanding the concept of a "trap” and thereby increasing the possessor’s liability for injuries caused by dangerous conditions on his land (see Bohlen, Fifty Years of Torts, 50 Harv L Rev, at p 740; 46 NY Jur, Premises Liability, § 32, p 94, n 13).
Thus, for example, the "child trespasser” doctrine has been developed to impose, in appropriate circumstances, liability upon a possessor for injuries sustained by children on his property regardless of whether they are trespassers (see concurring opn in Barker v Parnossa, 39 NY2d 926, decided herewith). The "economic benefit” theory which predicated invitee status upon the economic benefit the possessor may derive from the visitor’s presence, has been supplanted by the "public invitation” theory, which confers invitee status upon those who come upon the possessor’s property at the encouragement of the possessor (see Restatement, Torts 2d, § 332; Prosser, op. tit., at pp 388-389). In some States, social guests have been elevated from the licensee to the invitee category (Prosser, op. tit., at pp 378-379). Public employees, such as firemen and policemen, have been placed in a sui generis class, to whom is owed a duty of reasonable care to keep in a safe condition those parts of the premises which are used as the ordinary means of access, and to warn such employees, known to be on the property, of unforeseeably dangerous *247 conditions (see Beedenbender v Midtown Props., 4 AD2d 276, 281). And the concept of a "trap” has been expanded far beyond its origins in the ancient spring gun cases (see concurring opn in Barker v Parnossa, 39 NY2d 926, supra, decided herewith).
As noted by the majority, there has been criticism of the common-law approach (see, e.g., Kermarec v Compagnie Generale, 358 US 625, 630-631; 2 Harper and James, Torts, § 27.1, p 1432). The thrust of the criticism is that the common-law rules are complex and often susceptible of wooden application (e.g., Kermarec v Compagnie Generale, 358 US 625, 630-631, supra). In some jurisdictions, the common-law approach has been abandoned and replaced by a "single” standard, it is said, of reasonable care under the circumstances (see Rowland v Christian, 69 Cal 2d 108, 118; Pickard v City & County of Honolulu, 51 Haw 134, 135; Mile High Fence Co. v Radovich, 175 Col 537, 542; Mariorenzi v Joseph Di Ponte, Inc., 114 RI 294, 307; Premises Liability—Claimant’s Status, Ann., 32 ALR3d 508, 520-529; cf., e.g., Occupiers’ Liability Act [1957], 5 & 6 Eliz 2, ch 31; Mounsey v Ellard, 297 NE2d 43 [Mass], abolishing the distinction between licensees and invitees only).
As indicated earlier, the criticism has basis, but the cure may be radically destructive in ignoring the evolved and evolving principles, the elastic genius of the common-law process.
Most of the criticism was focused on the confusion caused by nomenclature, namely, "trespasser”, "licensee”, "invitee”, "affirmative negligence”, "trap”, and the like. The criticism is partly justified. But it must be seen for what it is—a logomachy over labels and not a disagreement with underlying policy. Thus, the critics have recognized that a person’s "status”, that is, the purpose for which he has come upon the property, is a significant element in determining foreseeability, and therefore the liability of a possessor (Rowland v Christian, 69 Cal 2d 108, 117-118, supra). Other elements, such as the closeness of the connection between the injury and the defendant’s conduct, the moral blame attached to the defendant’s conduct, and the policy of preventing future harm, despite assertion to the contrary, are in fact subsumed in the status of the party and the duty owed to one of that status.
The "single standard”, appealingly simple, is actually deceptively so. It has been observed that abolition of all developed *248 rules and principles in favor of a broad "single” standard of care is an illusory reform. Abolition, it is said, will engender only an evolution of a new set of rules under the "single” standard (see Payne, Occupiers’ Liability Act, 21 Mod L Rev 359, 362). If this be true, the single standard, like any monistic methodology, will hardly be a simplification but an enigma masked in an elusive generalization, so broad, that there are no articulated exceptions. The solution offered is that the jury will know and will decide.
Of course, candor compels recognition of the propensity of juries, motivated by sympathy, to allow injured plaintiffs, especially children, to recover even when the law would seem to suggest an opposite result (see Toomey v London, Brighton & South Coast Ry Co., 140 Eng Rep 694, 696 [CP; Williams, J.]; Marsh, History and Compositive Law of Invitees, Licensees and Trespassers, 69 LQ Rev, at pp 185-186; Hughes, Duties to Trespassers: A Comparative Survey and Revaluation 68 Yale LJ, at pp 699-700). The "single standard” provides hospitable ground for the play of jury ad hoc promulgation of "rules” of law, social policy, and sometimes humane but ungoverned and ungovernable sympathy.
The abolition of the common-law rules regarding deliberate adult trespassers is a good example. Surely a landowner is not obligated, even under the single standard, to make his property safe for adult trespassers entering upon the property to pursue criminal ends. It is no answer to say that the jury will take care of the problem by denying recovery to such a trespasser as a matter of fact. The role of the jury in our system is to find facts and not to make the law. The lawmaking function is the province of the Legislature and the courts. Where society has, for reasons of policy, given the lawmaking power to the jury, it has done so by provision in the organic law of the State (see NY Const, art I, § 8 [in criminal libel cases, the jury determines both the law and the facts]).
But all this is not to say that the rules, as presently formulated, are not in need of reform, judicial reform in the absence of legislative reform. Indeed, as noted earlier, beneath the nomenclature, and on a case-by-case basis in the Anglo-American judicial lawmaking process, reform has been taking place. It may be that further reform in this State is needed. Thus, for example, in the proper cases, many if not all, of the distinctions between licensees and invitees could be modified or should be eliminated.
*249 The rule of Krause v Alper (4 NY2d 518, 521, supra), which treats a social guest as a mere licensee, is illustrative of a problem ripe for re-examination. It has been said that the treatment of a social guest as a mere licensee ignores modern social customs, under which a social guest, expressly invited and even urged to come for the "social” and perhaps the indirect potential "economic” benefit of the possessor, expects more than mere inactivity for his safety (Prosser, op. cit., at p 379). Indeed, some jurisdictions have placed social guests within the category of invitees (see, e.g., Conn Gen Stat Ann, § 52-557-a; Genesee Merchants Bank & Trust Co. v Payne, 6 Mich App 204, affd 381 Mich 234; Daire v Southern Farm Bur. Cas. Ins. Co., 143 So 2d 389 [La]; cf. the cases noted supra abolishing the common-law distinctions partially or entirely). In the proper case, therefore, the rule treating invited guests as licensees deserves re-examination (see the exhaustive opn by J. Irwin Shapiro, J., in Sideman v Guttman, 38 AD2d 420, 423-425; Prosser, op. cit., at p 379, n 88; Restatement, Torts 2d, § 330, Comment h, par 3).
But such a re-evaluation in the instant case is unncessary. The jury could properly have found that Basso was a public invitee in that he presented himself to the rescuers and was enlisted in aid of their rescue operation. In such circumstances, the property owner owed Basso a duty to keep the premises reasonably safe for his use. Thus, it was a question of fact, properly resolvable by the jury, whether the road was maintained in a reasonably safe condition. But it is not a proper jury function to determine the rules or the duties owed by the possessor toward others or which the injured person owed to himself to save himself from harm.
However, as the majority has stated, the charge, on any view, with respect to the dtity owed to a licensee was incorrect, and thus the defendant Ice Caves Mountain, Inc., is entitled to a new trial.
Accordingly, I concur in the result and vote to modify the order of the Appellate Division and order a new trial with respect to defendant Ice Caves Mountain, Inc.
Judges Gabrielli, Jones, Wachtler and Fuchsberg concur with Judge Cooke; Chief Judge Breitel concurs in result in a separate opinion in which Judge Jasen concurs.
Order modified and the case remitted to Supreme Court, Kings County, for a new trial in accordance with the opinion *250 herein, with costs to abide the event, and, as., so modified, affirmed with costs to plaintiff against defendant Miller. Question certified answered in the negative.