*561 OPINION OF THE COURT
Jeremiah J. Moriarty, J.
Claimant seeks damages for personal injuries and property damage suffered by him on January 11, 1973 when the snowmobile he was operating struck a concrete dock. The claim was timely filed and has not been assigned.
On the evening in question, claimant and six other men attended a business meeting at the Shoreline Restaurant in Bemus Point on the east side of Chautauqua Lake. The meeting lasted from approximately 7:30 to 9:00 p.m. They remained at the restaurant an additional half hour during which time they shared one six pack of beer.
At about 9:30 p.m., the group broke up and four of the seven went snowmobiling on the frozen surface of Chautauqua Lake. Among the snowmobilers were Donald Wight, the claimant, and Donald C. Kayner, both of whom testified at the trial.
The destination of the snowmobilers was Maple Springs, about three miles up the lake. In order to get there, they had to travel on the lake past the Village of Bemus Point where snowmobiling was not allowed, and then proceed along roads in the Town of Ellery, and through Long Point State Park to their destination. Mr. Kayner testified that snowmobiling was permitted in the Town of Ellery as well as the State park, provided the vehicles were properly licensed and insured and permits were obtained. Apparently, these four snowmobilers satisfied the foregoing conditions on the night in question.
Neither claimant nor Mr. Kayner checked the weather conditions before the trip. Mr. Kayner described the weather conditions at the start of the trip as a pleasant winter evening, with six to eight inches of snow on top of the frozen lake surface. He testified that, after a brief bit of snowmobiling on the lake, they encountered sudden blizzard-like conditions, the result of a squall blowing new and old snow. Prior to the change in weather conditions, they had been traveling four abreast. With the change in conditions, they conferred and decided to get off the lake as quickly as possible. They then proceeded toward shore, traveling single file with claimant in the lead and Mr. Kayner in the rear, because they were more familiar with the lake than the other two.
As they proceeded toward shore, the blowing snow severely impaired visibility. Claimant testified he could see only 20 feet in front of him. He stated that he had his visor down and *562 probably had his headlight on low beam; both of these would aid visibility under the conditions as they existed. Mr. Kayner, in the rear, testified that he could see some 50 to 60 feet ahead. He pointed out that he had not only the benefit of his own headlight, but that of the lights of his companions as well.
Mr. Kayner testified that he did not actually see the accident. Rather, he saw claimant, whose speed he estimated at 10 miles per hour, stop. It appeared to him that claimant had struck a snowbank which he could not go through because of his low speed. Immediately thereafter, he determined that claimant had collided with a concrete dock.
Claimant testified that as he approached what developed to be the dock, it appeared to him to be a snowdrift at a point where land and water met. He saw no markings which would indicate the presence of a dock, and had no idea where they were at the time. He thought they had passed that part of Long Point State Park where the dock was located, and were in an area where the land slopes gently to the water, providing easy access to the shore.
As he approached this "snowdrift”, claimant squared off his snowmobile, and gunned the engine a little in order to power the machine through. He then struck a leg of the dock and came to an abrupt stop.
The dock which claimant struck is a part of Long Point State Park and was owned and maintained by the State of New York on the date in question. The dock, according to claimant’s description, is perpendicular to the breakwall with a "T” section parallel to the wall which extends into the lake. He testified that he struck the parallel section about one third of its length from the extreme right end.
As a result of the collision with the dock, claimant hit his mouth on the handlebars of his snowmobile. He suffered a cut lip and damaged teeth which were treated that night at the WCA Hospital Emergency Room in Jamestown, New York (having been taken from the scene to his home on a companion’s snowmobile and then to the hospital by his wife), and by his dentist subsequently. Damage to the snowmobile as a result of the accident consisted of a bent right ski and loosened motor mounts. It was not operable after the accident.
It is claimant’s position that the State was negligent in maintenance of the concrete dock at Long Point State Park in that it failed "properly to mark, disclose and advertise” the *563 concrete dock in question. Since the accident herein resulted from the operation of a snowmobile, the standard by which the conduct of the owner defendant State must be judged is stated in section 9-103 of the General Obligations Law, which provides in relevant part as follows:
"1. Except as provided in subdivision two,
"a. an owner, lessee or occupant of premises, whether or not posted as provided in section three hundred sixty-six of the conservation law, owes no duty to keep the premises safe for entry or use by others for hunting, fishing, trapping, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreational purposes, snowmobile operation or training of dogs, or to give warning of any hazardous condition or use of or structure or activity on such premises to persons entering for such purposes;
"b. an owner, lessee or occupant of premises who gives permission to another to pursue any such activities upon such premises does not thereby (1) extend any assurance that the premises are safe for such purpose, or (2) constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or (3) assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted.
"2. This section does not limit the liability which would otherwise exist
"a. for willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity; or "b. for injury suffered in any case where permission to pursue any of the activities enumerated in this section was granted for a consideration”.
The foregoing statute has been said to be a codification of the common law with regard to the status of a plaintiff engaged in snowmobiling and other enumerated outdoor recreational activities and the duty of a landowner thereto. (Rock v Concrete Materials, 46 AD2d 300, app dsmd 36 NY2d 772.) The status of a nonpaying snowmobiler upon the lands of another is fixed as that of a licensee. Such a landowner is liable, under the statute, only "for willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity” (General Obligations Law, § 9-103, subd 2, par a). That standard is nothing more than a statutory restatement of the common-law duty of care owed to a li *564 censee. (See 3 Warren, Negligence, ch 16, Licensees, § 4.01; Rock v Concrete Materials, supra.)
The common-law rules which govern the duty a landowner owes to a user of his land based upon the legal status of the user as a trespasser, licensee or invitee were recently considered by the Court of Appeals. The decisions of that court in Basso v Miller (40 NY2d 233), and Scurti v City of New York (40 NY2d 433), rejected the rigid standards of care owed by a landowner to a plaintiff based upon the latter’s status as a trespasser, licensee or invitee. Those standards were replaced by a "single standard of reasonable care under the circumstances whereby foreseeability shall be a measure of liability.” (Basso v Miller, supra, p 241.) Although the status of the plaintiff no longer controls the scope of the duty of a landowner under the single standard approach, that status remains a factor to be considered in any determination of the foreseeability of a particular accident. (Basso v Miller, supra, p 241.)
Faced with the foregoing conflicting rules which govern a landowner’s duty to a snowmobiler or other sportsman using his land, the court must determine which standard governs, and then apply that standard to the circumstances of this claim.
Although the judiciary has the power to continually fix and amend common-law rules which have their roots in the judicial process, it is axiomatic that this power is abruptly limited, and cut off, in those areas where the Legislature has seen fit to codify a common-law rule. In such a case, under our system of separation of powers, it is the province of the Legislature, not the judiciary, to make whatever changes in those codified rules evolving circumstances may warrant. Thus, we see no alternative, but to disregard the standard enunciated in the Basso and Scurti cases, and apply the standard expressed in section 9-103 of the General Obligations Law to the facts of this case.
The common-law duty of care owed by an occupier of land to a licensee is to refrain from intentional, wanton or willful infliction of injuries, and to warn of ¡traps and dangerous defects not likely to be discovered by the licensee. (Le Roux v State of New York, 307 NY 397; Rock v Concrete Materials supra; 46 NY Jur, Premises Liability, §§ 40, 43.) It is claimant’s contention that the concrete dock with which he collided *565 constituted such a trap, and that the State’s failure to warn was actionable negligence.
Claimant testified that the dock which he mistook for a snowbank appeared to him to be "beautifully disguised”. He said that the "snowbank” extended, within the range of his headlight, completely across the horizon.
Claimant also testified that he was aware of the presence of this concrete dock on Lake Chautauqua from other snowmobiling trips on the lake. In fact, he had been snowmobiling within 300 feet of the dock one week before the accident. Mr. Kayner testified that when he returned to the scene the morning following the accident, he could distinguish the dock.
From the foregoing, the court cannot find that the State was negligent. The cause of claimant’s injury was not a "trap” or a "dangerous defect” of which the State had a duty to warn. The concrete dock was plainly visible except under the most adverse weather conditions. It is not reasonable to require the State to foresee that snowmobilers would make use of the lake in such conditions. The court finds that claimant has failed to sustain his burden of proof on the issue of negligence.
Claimant knew of the existence of the dock as well as its position on the lake and, through an error of judgment, thought he had cleared the area of the dock in his attempt to reach shore. At the moment he hit the dock, he was accelerating. The court cannot find that such actions, in the face of adverse weather conditions which impaired visibility, and in the face of claimant’s actual knowledge that the dock might be proximate to his location, constituted reasonable prudence under all the circumstances. The court finds that claimant has failed to sustain his burden of proof on the issue of freedom from contributory negligence.
Having found the State free from negligence and the claimant contributorily negligent, we now grant the State’s motion, made at the close of claimant’s case and renewed at the close of the evidence, to dismiss this claim.