## Hahn v. Commonwealth

*Wayne C. Parsil*, for plaintiffs.
*Thomas E. Wood*, for defendants.

SHARP, *P.J.*, May 3, 1980

### FACTUAL BACKGROUND

Mervin E. Hahn and his wife Shirley are residents and taxpayers of the Commonwealth, in Flemington, Clinton County, Pa. About 5:30 p.m., August

16, 1975, plaintiffs entered the portion of the Bald Eagle State Park known as the Foster Joseph Sayers Dam Project. The Commonwealth Department of Environmental Resources leases the area from the U.S. Army under a 40 year lease. While walking to a lakeside area, frequently used by members' of the public when in the park, plaintiff Mervin E. Hahn fell into a hole some 16″-18″ in diameter, allegedly manmade.

Plaintiff Hahn alleges that as a result of the fall he injured his left foot. As Hahn is diabetic, he asserts that the injury soon infected and ultimately turned gangrenous. Hahn asserts a causal connection between the gangrenous injury to his foot and a heart condition that has arisen since the time of the injury. Hahn contends that the heart disease he now suffers directly results from the injury's becoming gangrenous, coupled with a long and arduous recovery period.

Based on the above facts, a complaint in trespass was filed pleading numerous items of damage, both economic and noneconomic. His wife claims loss of companionship past and future.

The Commonwealth has filed preliminary objections in the nature of a demurrer. The Commonwealth's demurrer bases itself on the interaction of the Recreation Use of Land and Water Act of February 2, 1966, P.L. (1965) 1860, 68 P.S. §477-1 et seq., and the Sovereign Immunity Act, 42 Pa.C.S.A. §5110. The crux of the Commonwealth's position rests on the language of 42 Pa.C.S.A. §5110 of the Sovereign Immunity Act that states:

"§5110. Limited waiver of sovereign immunity.

"(a) General rule      The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the fol-

lowing instances only and only to the extent set forth in this section and within the limits set forth in section 5111 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth agencies, and their officials and employees acting within the scope of their duties, *for damages arising out of a negligent act or omission where the damages would be recoverable under the common law or a statute creating a cause of action if caused by a person not having available the defense of sovereign immunity.* An action shall not be barred and the defense of sovereign immunity shall not be raised to claims for: [Listing eight areas of limited waiver of sovereign immunity containing, inter alia:]

"(4) Commonwealth real estate, highways and sidewalks.—Damages caused by a dangerous condition of Commonwealth real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of the Commonwealth and Commonwealth real property leased to private persons, and highways under the jurisdiction of Commonwealth agencies except as limited in paragraph (5)." (Emphasis supplied.)

Thus, the Commonwealth concludes that neither Mayle v. Pa. Dept. of Highways, 479 Pa. 384, 388 A. 2d 709 (1978) (holding that the doctrine of sovereign immunity in the Commonwealth resulted from a mistaken view of the law by earlier courts), nor the Soveriegn Immunity Act created new causes of action or defenses not heretofore extant for use by a party to a private suit. Succinctly stated, the Commonwealth posits that in the limited subject matter areas where it has consented to suit, with some exceptions dealing with "official" immunity, the status of the parties is that of private

litigants. Consequently, only those claims and defenses recognized as available to private litigants at common law or by statute are available under the Sovereign Immunity Act.

Accordingly, the Commonwealth turns to the Recreation Use of Land and Water Act, 68 P.S. §477-1 et seq., and the limitations of liabilities available under it.

68 P.S. §477-3,4,6 provide the salient limitations.

"§477-3. Duty to keep premises safe; warning

"Except as specifically recognized or provided in section 6 of this act, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

"§477-4. Assurance of safe premises; duty of care; responsibility, liability

"Except as specifically recognized by or provided in section 6 of this act, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby: (1) Extend any assurance that the premises are safe for any purpose. (2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed. (3) Assume responsibility for or incur liability for any injury to persons or property caused by an act of omission of such persons."

". . .

"§477-6. Liability not limited

"Nothing in this act limits in any way any liability which otherwise exists: (1) For wilful or malicious

failure to guard or warn against a dangerous condition, use, structure, or activity. (2) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the State of a subdivision thereof, any consideration received by the owner for such lease shall not be deemed a charge within the meaning of this section." (Footnotes omitted.)

Since 68 P.S. § 477-2(2) defines "owner" as "the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises," the Commonwealth opines that it is a landowner under the Recreation Use of Land and Water Act and may avail itself of the immunity granted thereby as plaintiff Mervin E. Hahn, admittedly, was using the Foster Joseph Sayers Dam Project Area of Bald Eagle State Park for recreational purposes and that the Commonwealth did not charge an entry fee.[1]

---

1. Plaintiffs filed a pleading captioned "Plaintiffs' answer to preliminary objections" wherein plaintiffs asserted, inter alia ". . . Plaintiffs deny that they are not charged for use of Bald Eagle State Park in that Plaintiffs are taxpayers and are effectively charged for use of the park."

In 2 Anderson, Pa. Civ. Prac. § 1017.151, it is stated: "A preliminary objection in the nature of a motion to strike may be filed to a demurrer. *No other pleading may be filed in response thereto.*" (Emphasis supplied.)

In acting upon a demurrer, the court must confine itself to an examination of the record. On demurrer, the court may not consider averments not appearing on the record. Thus, as "Plaintiffs' Answer to Preliminary Objections" is not a permissible pleading to a demurrer. Plaintiffs' assertions that as taxpayers they are "charged" to enter the park are not properly before the court. Even though the court must accept as true all plaintiffs' well pleaded averments of fact, the court is confined to searching the record properly before it. In this case the record properly before the court is plaintiffs' complaint and

## DISCUSSION

Both sides assume that the Sovereign Immunity Act applies to the present controversy. Since the Commonwealth Court order of December 28, 1978 transferring the case to Centre County does so under authority of the Sovereign Immunity Act, the Commonwealth Court appears to agree.

The Sovereign Immunity Act may, helpfully, be viewed as a conduit or a transmission line. In specified areas, see 42 Pa.C.S.A. §5110(a)(1-8), that act now permits suit against the Commonwealth. However, only those claims that were available by statute or at common law between private parties for damages from negligent acts or omissions are available to litigants pressing claims against the Commonwealth. See 42 Pa.C.S.A. §5110(a). Logic dictates that the same defenses available to private parties in actions between private litigants must be available to the parties to a suit brought by the permission of the Commonwealth as embodied in the Sovereign Immunity Act.

nothing more. As plaintiffs' complaint nowhere avers that the Commonwealth "charged," either directly or indirectly, plaintiffs so that they could enter the park, the court should not allow this theory of liability to be injected into the case by impermissible pleading.

In any event, 68 P.S. §477-2(4) defines "charge" as "the admission price or fee *asked in return for invitation or permission to enter or go upon the land*," (emphasis supplied), consequently, it appears that the "charge" contemplated by the act must be one that is levied directly in return for permission to enter upon the land. As there must be a "quid pro quo", i.e., a charge in exchange for permission to enter *that land at that time,* plaintiffs' paying taxes to the Commonwealth does not constitute a "charge" under the act so as to thrust the Commonwealth, assuming the act's applicability to it, into the unlimited liability provisions of 68 P.S. §477-6.

Hence, the Commonwealth's raising of the Recreation Use of Land and Water Act, 68 P.S. §471-1 et seq., has initial appeal. Plaintiff Mervin E. Hahn was injured while using the Commonwealth's land for recreational purposes. As a private defendant could raise the defenses of the act, so too should the Commonwealth be allowed to interpose them under similar circumstances.

To both sides the crucial question is whether the Commonwealth is an "owner" of land within the meaning of 68 P.S. §477-1. Both sides have provided cases from other states, decided under very similar statutes, that support both sides of the argument, i.e., that the state is or is not an "owner" of land to which the liability limitations apply.

Plaintiffs cite Goodson v. Racine, 61 Wis. 2d 554, 213 N.W. 2d 16 (1973), to support the view that the Commonwealth is not an "owner" of land within the ambit of 68 P.S. §477-2(2). In Goodson, the Wisconsin Supreme Court squarely faced the question of whether the state was a landowner for the purposes of the Wisconsin Landowners Liability Act [Wis. Stat. §29.68], quoted at p. 556, fn. 1:

"'Liability of Landowners. (1) Safe for entry: no warning. An owner, lessee, or occupant of premises owes no duty to keep the premises safe for entry or use by others for hunting, fishing, trapping, camping, hiking, snowmobiling, berry picking, water sports, sightseeing or recreational purposes, or to give warning of any unsafe condition or use of or structure or activity on such premises to persons entering for such purposes, except as provided in sub. (3).

"'(2) Permission, An owner, lessee or occupant of premises who gives permission to another to hunt, fish, trap, camp, hike, snowmobile, sightsee, berry

pick or to proceed with water sports or recreational uses upon such premises does not thereby extend any assurance that the premises are safe for such purpose, or constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted, except as provided in sub. (3).

"'(3) Liability. This section does not limit the liability which would otherwise exist for wilful or malicious failure to guard or to warn against a dangerous condition, use, structure or activity; or for injury suffered in any case where permission to hunt, fish, trap, camp, hike, snowmobile, sightsee, berry pick or to proceed with water sports or recreational uses was granted for a valuable consideration other than the valuable consideration paid to said landowner by the state; or for injury caused by acts of persons to whom permission to hunt, fish, trap, camp, hike, snowmobile, sightsee, berry pick or to proceed with water sports or recreational uses was granted, to other persons as to whom the person granting permission, or the owner, lessee or occupant of the premises, owed a duty to keep the premises safe or to warn of danger. As used in this subsection "valuable consideration" shall not include contributions to the sound management and husbandry of natural and agricultural resources of the state resulting directly from the recreational activity.

"'(4) Injury to person or property. Nothing in this section creates a duty of care or ground of liability for injury to person or property.

"'(5) Definition. The word "premises" as used in this section includes land, private ways and any

buildings, structures, and improvements thereon.'"

"The legislative history of the statute reveals that the purpose for which the statute was promulgated was to limit the liability of private landowners who opened their lands to the public.

"'It seems that forest owners had suffered substantial damage to forest reproduction as a result of excessive deer herds and in the late 1950's they initiated a campaign to promote deer hunting on their forest lands. Later the forest owners became concerned about their potential liability for injuries suffered by those whom they had invited upon their lands and sought a statutory limitation of their liability; sec. 29.68, Stats. resulted.'" Copeland v. Larson, supra, [46 Wis. 2d] at p. 344, [174 N.W. 2d at p. 749].

"Likewise, the legislative intent was described by the introductory language of Ch. 89, Laws of 1963, which specifically enumerated those landowners intended to be included within the ambit of the statute.

"'An Act to create 29.68 of the statutes, relating to the limitations on liability of landowners who open *private* lands for recreational purposes. (Emphasis supplied.)

"Thus, the legislative intent of the statute is obvious and we hold that sec. 29.68, Stats. is not applicable to a municipality so as to limit its liability for persons injured while present on its property. The statute must be strictly construed so as to limit its effect to private landowners." (Emphasis in original). Goodson v. Racine, supra, 61 Wis. 2d 558, 559, 213 N.W. 2d at 18-19.

The Pennsylvania act contains no such reference to *private* landowners. Indeed, the purpose of the

act relates only to owners of land, viz., 68 P.S. §477-1:

"Purpose; liability   The purpose of this act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

"Title of Act:   An Act encouraging landowners to make land and water areas available to the public for recreational purposes by limiting liability in connection therewith, and repealing certain acts. 1966, Feb. 2, P.L. (1965) 1860."

Thus, by its own terms, plaintiffs' authority for asserting that the Commonwealth may not avail itself of the limitations of liability provided by the Recreation Use of Land and Water Act, applied only to private landowners. Accordingly, plaintiffs gain nothing by relying on the Wisconsin statute and cases decided under it on this point.

However, the Commonwealth's conclusion that it possesses the status of an "owner of land" under the Recreation Use of Land and Water Act does not necessarily flow from the failure of the statute to limit itself to "private owners of land." The Recreation Use of Land and Water Act was passed in 1966. At that time, it was not open to serious question that the Commonwealth possessed sovereign immunity. It seems safe to assume that the legislature, when limiting the liability of landowners, believed the state immune from suit. Consequently, one must seriously question whether the legislature intended to confer upon the Commonwealth a redundant immunity. It is axiomatic that the courts, when construing statutory language, must presume that the legislature did not intend an absurd result or intend to perform a useless act when enacting the

statute. See 1 Pa.C.S.A. § 1922. In sum, the legislature is presumed not to have intended provisions in its laws as mere surplusage: Com. v. Hill, 236 Pa. Superior Ct. 572, 346 A. 2d 314 (1975).

At best then, to ascribe to the legislature an intent to include the Commonwealth as an "owner of land" in the Recreation Use of Land and Water Act so that the *completely* immune Commonwealth would enjoy an *additional limited* immunity would result in the enactment being either surplusage or reaching an absurd result.

Thus, it would appear that the statute does not apply to the Commonwealth. The cases cited by the Commonwealth for the proposition that the limitations of liability contained in the Recreation Use of Land and Water Act should apply to the Commonwealth are inapposite. Defendants in these cases were either municipal corporations or authorities. In the New York case where the state was the defendant, the action was brought in the New York Court of Claims where the question of whether the state could raise the defenses of a similar statute, due to its being the owner of a lake and dock was assumed sub silentio. Accordingly, this case presents no clear benchmark by which to determine whether the Commonwealth is a "landowner" under the Recreation Use of Land and Water Act.

At the time the Recreation Use of Land and Water Act was passed, the legislature could not have believed the act necessary to protect the Commonwealth from suits arising from the recreational use of Commonwealth lands. Hence, the Recreation Use of Land and Water Act does not bar plaintiffs' suit.

Alternatively, even if the court were to assume that the Recreation Use of Land and Water Act

applies to the present case, the Commonwealth's demurrer could not be granted.

In Wright v. State of New York, 93 Misc. 2d 560, 403 N.Y.S. 2d 450 (Ct. of Claims 1978), in construing the New York statute, N.Y. Gen. Oblig. Law §9-103 (McKinney):

"'1. Except as provided in subdivision two,

"'a. *an owner, lessee or occupant of premises, whether or not posted as provided in section three hundred sixty-six of the conservation law, owes no duty to keep the premises safe for entry or use by others for hunting, fishing, trapping, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreational purposes, snowmobile operation or training of dogs, or to give warning of any hazardous condition or use of or structure or activity on such premises to persons entering for such purposes:*

"'b. an owner, lessee or occupant of premises who gives permission to another to pursue any such activities upon such premises does not thereby (1) extend any assurance that the premises are safe for such purpose, or (2) *constitute the person to whom permission is granted an invitee to whom a duty of care is owed,* or (3) assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted.

"'2. *This section does not limit the liability which would otherwise exist* a. *for wilful or malicious failure to guard, or to warn against, a dangerous condition, use structure or activity;* or b. for injury suffered in any case where permission to pursue any of the activities enumerated in this section was granted for a consideration'." (Emphasis supplied.)

the court stated at p. 563:

"*The foregoing statute has been said to be a codification of the common law with regard to the status of a plaintiff engaged in snowmobiling and other enumerated outdoor recreational activities and the duty of a landowner thereto.* (Rock v. Concrete Materials, Inc. 46 AD 2d 300, [362 N.Y.S. 2d 258,] app dismd 36 NY 2d 772 [368 N.Y.S. 2d 841, 329 N.E. 2d 672.] *The status of a nonpaying snowmobiler upon the lands of another is fixed as that of a licensee. Such a landowner is liable, under the statute, only 'for willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity.'* (General Obligations Law, §9-103(1), subd. 2, par. a). *That standard is nothing more than a statutory restatement of the common law duty of care owed to a licensee.* (See 3 Warren, Negligence, ch. 16, Licensees, §4.01; Rock v. Concrete Materials, supra.)" (Emphasis supplied.)

The rationale relied upon in Wright v. State, supra, was enunciated in Rock v. Concrete Materials, Inc., 46 A.D. 2d 300, 362 N.Y.S. 2d 258, app. dism'd, 36 N.Y. 2d 772, 329 N.E. 2d 672, 368 N.Y.S. 2d 841 (1975):

"We do not agree with the Trial Judge that the effect of this statute is to eliminate the duty owed at common law to invitees or licensees. Rather, we feel that the purpose of the statute is to codify the common law and prevent the extension of liability to injured licensees in accordance with more liberal approaches taken in other jurisdictions or under the Restatement of Torts, and thus relieve the anxieties of landowners who feared liability to sportsmen using their land with permission (see

[citing legislative history])." 46 A.D. 302, 362 N.Y.S. 2d at 260-261.

When one compares the New York statute with 68 P.S. §§477-4,6, the following becomes clear. Under both statutes the duty owed to people on the land for recreational purposes where no charge is made is to refrain from "wilful or malicious failure to guard or warn against a dangerous condition, use, structure or activity." Under both statutes there is no limitation of liability where the landowner "charges" for permission to enter. Thus, the Pennsylvania and New York statutes do not limit liability under almost the same language. Thus, the instances where liability is not limited should be the same under both statutes.

The New York cases hold specifically that the phrase "'for willful or malicious failure to guard or to warn against, a dangerous condition, use, structure, or activity,'" is "'nothing more than a statutory restatement of the common law duty of care owed to a licensee.'" In Pennsylvania

"[T]he possessor of premises is not liable to gratuitous licensee . . . *except that he be guilty of wilful or wanton injury* . . . The possessor of premises at most . . . owes the duty of 'reasonable care to disclose . . . [to the gratuitous licensees] dangerous conditions known to it [the possessor] and not likely to be discovered by him [the gratuitous licensee], or to make such conditions reasonably safe' . . ." Kopp v. R. S. Noonan, Inc., 385 Pa. 460, 462-263, 123 A. 2d 429 (1956) (emphasis supplied) (citations omitted); see, also, 27 P.L.E., Negligence §43.

Thus, the Pennsylvania statute's formulation of "wilful and malicious" as grounds for non-exemption from liability would seem to be, in effect,

identical to the common law's standard of "wilful and wanton." Accordingly, it appears that in Pennsylvania, as in New York, the legislature enacted ". . . nothing more than a statutory restatement of the common law duty of care owed to a licensee."

However, if 68 P.S. §477-6 merely restates the common law duty of care owed to a licensee, a conflict may result between §477-6(1) and §477-4, that states:

"Except as specifically recognized by or provided in [68 P.S. §477-6] an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby; . . . (2) confer upon such person the legal status of an invitee *or licensee* to whom a duty of care is owed." (Emphasis supplied.)

Apparently, section 477-4(2) abolishes the status of licensee where the Recreation Use of Land and Water Act applies. But, 68 P.S. §477-6(1) mandates that liability is not limited for injuries resulting from "wilful and malicious" acts, etc.; this is the same duty a landowner owes to a gratuitous licensee at common law. Thus, the statute abolishes the "status" of licensee and the duty owed to a licensee, but then mandates no limitation of liability for injuries resulting from acts that would constitute a breach of the duty owed to a gratuitous licensee at common law.

Seemingly, persons on the land of another, with permission, for recreation purposes are not licensees, but if the visitor or user is injured under circumstances amounting to a breach of the duty owed by a landowner to a gratuitous licensee at common law, there is no limitation of the landowner's liability.

This apparent conflict is resolved by the holding in Rock v. Concrete Materials, Inc., supra, 362 N.Y.S. 2d at 260-261, that the statute codified the common law. In effect, the Recreation Use of Land and Water Act "freezes" the duty owed by the landowner to people on his land for recreation to the classic common law formulation of the duty. Thus, further growth of the ability of individuals to recover damages from owners and occupiers of land will not expand the liability of individuals who open up their property to use by the public for recreation.

Accordingly, insofar as Hahn's complaint asserts that the Commonwealth possessed *actual* knowledge of a dangerous condition on the land, that was not an obvious hazard and unlikely to be discovered by him, the Commonwealth's failure to either make the land safe or to warn of its dangers supports a cause of action.

"In other words, the possessor of property owes no duty to a gratuitous licensee to eliminate an obvious hazard, but at most a duty to disclose dangerous conditions known by him to exist and not likely to be discovered by the licensee; as our Supreme Court has put it, a possessor of land is under a duty to gratuitous licensees to exercise reasonable care, either to make the land as safe as it appears or to disclose the fact that it is as dangerous as he knows it to be. Such a licensee, in whose visit the possessor has no interest, is not entitled to expect that special preparations will be made for his safety or that the possessor will warn him of conditions which are perceptible by his senses, and, if the licensees are adults, the fact that the condition is obvious is usually sufficient to apprise them, as fully as the possessor, of the full extent of the risks involved in it." 27 P.L.E., Negligence §43.

Accordingly this May 3, 1980, the preliminary objections of the Commonwealth of Pennsylvania are denied.