## (November 6, 1980)

■ Leland A. Curtiss, as Administrator of the Estate of Thomas E. Curtiss, Deceased, Respondent-Appellant, v County of Chemung, Defendant and Third-Party Plaintiff-Appellant-Respondent. Raymond Diesel et al., Third-Party Defendants-Respondents. (And Two Other Actions.) — Cross appeals and appeals (1) from judgments of the Supreme Court, entered June 8, 1979, June 21, 1979 and June 22, 1979 in Chemung County, upon verdicts rendered at a Trial Term, in favor of plaintiffs in three jointly tried actions, and (2) from judgments of the same court, entered May 22, 1979, May 31, 1979, June 8, 1979 and July 10, 1979 in Chemung County, which dismissed the third-party complaints in each of the three actions. On January 19, 1976, the plaintiff

Curtiss' intestate, aged 17, was killed and the plaintiffs Madden, aged 15, and Diesel, aged 17, were injured, when a shed located on a farm owned by the defendant county collapsed while they were inside. A fourth boy named Ahrens escaped safely. When the farm was obtained by the county in 1968, the other buildings thereon were demolished; the shed was left standing, however, since an inspection then revealed it was structurally sound. Between 1970 and the date of the accident, with the county's knowledge and implied consent, the lands and the shed were used by the public for hunting, hiking, snowmobiling and minibiking. Part of the farm consisted of 90 tillable acres which were leased to the third-party defendant Rhodes in 1970 and from year to year thereafter. Despite the express inclusion of the shed in the lease, however, the trial proof revealed that during the lease it was the county that used the shed for storage of farm machinery, and that Rhodes never actually used it. On the date of the accident, the schools were closed because of snow and other weather conditions, and the four boys, with their guns and dogs, went to the farm to hike and hunt. Subsequently, they congregated in the shed and lit a fire on the earth floor to warm themselves. The testimony revealed that the Curtiss boy struck a supporting beam of the shed with a log 10 feet long and four inches to eight inches in diameter just before its collapse. Thereafter, actions were commenced on behalf of each of the plaintiffs, Curtiss, Diesel and Madden, against the county. In the Curtiss action, the county impleaded Diesel and Rhodes as third-party defendants. In the Diesel action, the county sued the Curtiss estate and Rhodes. In the Madden action, the county sued the Curtiss estate, Rhodes and Diesel in its third-party action. The jury found the county solely liable and awarded the Curtiss estate $1,917; Madden, $5,000, and Diesel, $1,833.15. Thereupon, the trial court directed verdicts in favor of all third-party defendants, denied the plaintiffs' motion to set aside the verdicts for inadequacy, and entered judgments for the plaintiffs in the amounts found by the jury. The county appeals from each of the judgments for the refusal by the trial court to dismiss the complaints for failure of the plaintiffs· to prove a cause of action under section 9-103 of the General Obligations Law, and for the refusal of the trial court to charge the jury in regard to the standard of care prescribed by that section. Two plaintiffs, the Curtiss estate and Madden, cross-appeal on the ground of the inadequacy of their verdicts. The plaintiff Diesel has not appealed. The proof is undisputed that each of the plaintiffs entered and used the premises on the date of the accident for hunting and hiking or a combination of both. Their presence in the shed, when it collapsed, was incidental to such entry and use. There can be no doubt, therefore, of the applicability of section 9-103 of the General Obligations Law, and the trial court's failure to consider that statute in response to the county's motion was reversible error requiring a new trial. As it read in 1976, and as relevant, section 9-103 provides: "1. Except as provided in subdivision two, a. an owner, lessee or occupant of premises * * * owes no duty to keep the premises safe for entry or use by others for hunting * * * hiking * * * or to give warning of any hazardous condition or use of or structure * * * on such premises to persons entering for such purposes * * * 2. This section does not limit the liability which would otherwise exist a. for willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity". The legislative purpose of the statute was to encourage land owners to open their lands to public use for the specified recreational purposes and to limit their liability if they did (Memorandum of Joint Legislative Committee on Revision of the Conservation Law, 1956 McKinney's Session Law, p 1943). The intent was to codify the common law as it existed when the statute was enacted, and the statutory duty imposed is to refrain from "willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity" (Rock v Concrete Materials, 46 AD2d 300, 302, app dsmd 36 NY2d 772). Because

the statute expressly codified the common law, it remained unaffected by the decision in *Basso v Miller* (40 NY2d 233), which overruled the prior common-law categories of land users, and adopted the single standard of reasonable care in the foreseeable circumstances *(Wight v State of New York,* 93 Misc 2d 560; cf. *La Carte v New York Explosives Corp.,* 72 AD2d 873). Since there was no intentional, wanton or willful infliction of injuries herein *(Wight v State of New York, supra),* the duty of the defendant county was to warn those coming upon the land for the specified statutory recreational purposes, such as these plaintiffs, of traps or unreasonably hazardous defects of which the county knew and which the plaintiffs could not discover upon reasonable inspection *(Rock v Concrete Materials, supra,* p 303). The plaintiffs' causes of action depend, therefore, on whether their proof discloses that the shed which collapsed constituted "a trap" insofar as its imminent danger of collapse was or should have been known to the county, that the defendant county failed to use care commensurate with the risk involved, and that the accident was foreseeable (see *Runkel v City of New York,* 282 App Div 173, 176), or that the county maintained the shed as an inherently dangerous instrumentality on its land and failed to exercise that degree of care which would prevent foreseeable injury (see *Beauchamp v New York City Housing Auth.,* 12 NY2d 400, 405). This theory having been excluded by the ruling of the trial court, it seems appropriate to allow its exploration at least, in the retrial that is being ordered herein. As to the county's third-party causes of action, those asserted against Curtiss and Diesel should be reinstated and retried along with the main causes of action. As to the third-party Rhodes, however, there is no proof in the record, either direct or inferable, on which the county could predicate a third-party cause of action for indemnity or apportionment of its liability, if any, against Rhodes. Accordingly, the trial court's dismissal of the third-party causes of action against Rhodes was correct. Judgments in favor of plaintiffs and judgments in favor of third-party defendants Curtiss and Diesel reversed, on the law, and a new trial ordered, with costs to abide the event; judgments in favor of third-party defendant Rhodes affirmed, without costs. Greenblott, J. P., Main, Mikoll, Casey and Herlihy, JJ., concur.