Marjorie R. Sega, Appellant, v State of New York, Respondent. (Claim No. 61468.)

Third Department, November 18, 1982

**APPEARANCES OF COUNSEL**

*Spitz, Spitz & Fedordchak* (*Andrew L. Spitz* of counsel), for appellant.

*Robert Abrams, Attorney-General* (*Henderson G. Riggs* and *Jeremiah Jochnowitz* of counsel), for respondent.

**OPINION OF THE COURT**

Casey, J.

Peekamoose Campsite is a State owned and operated 700-acre public recreational facility located in Ulster County. On July 14, 1976, claimant, a 24 year old, 5 foot 7 inch, 155-pound woman, was acting as a counsellor to a

group of teen-age hikers and had, after walking for about two hours, arrived at a bridge which spanned the Rondout Creek in the campsite. The bridge had guardrails on each side consisting of two two inch in diameter horizontal metal pipes. These guardrails were held in position by perpendicular pipe posts with "T" couplings, spaced 8 to 10 feet apart and set in a concrete base. The top horizontal pipe was 3 to 4 feet above ground level and the lower pipe about one-half that distance. When her hiking party stopped at the bridge, claimant elected to sit on the top horizontal pipe of the railing of the second section, with her feet dangling out over the water which flowed 18 to 20 feet below. Having been in that position only a minute, the pipe on which she was seated pulled out of its coupling nearest the entrance to the bridge and collapsed, causing her to fall into the creek.

Claimant contended at trial of the liability issue that the cause of the railing's collapse was a vehicular accident that had occurred on the 1975 Labor Day weekend, about 10 months before. At that time, a vehicle had struck a cable that had been stretched between the two upright pipes at the bridge entrance to bar vehicles from using the bridge. As a result, the end pipe which held the cable on the side of the bridge on which claimant ultimately sat, was bent inward. Employees of the State, when notified of this accident, inspected the damage, found it slight and decided that repairs were not necessary. Claimant's engineer testified that the inward bending of the first upright by the vehicular accident twisted the second upright sufficiently to loosen or to slightly displace the top rail from its couplings at that second juncture and when claimant sat on the railing of the second section, her weight caused it to separate completely from its coupling and to collapse, causing her to fall.

The State, on the other hand, urged that after the prior accident of which it admits notice, its employees inspected the damage on several occasions and always found the slightly bent upright firm and solid; that claimant herself also found it so when she shook it before seating herself on the railing; that her use of the railing was not reasonably

foreseeable; that claimant's conduct alone caused her injury and, therefore, the State should not be held liable.

The trial court found that the State owned and controlled the bridge but that the State was not negligent in failing to realize that the prior accident caused a weakening of the rail on which claimant sat, and that the inspections made by the State revealed no defect in the railing and, therefore, the State was not negligent. Accordingly, the claim was dismissed.

■ Although the Court of Claims absolved the State from ordinary negligence in these circumstances, we believe that the provisions of section 9-103 of the General Obligations Law provide the applicable standard here, and limit the State's liability more than that of an owner of nonpublic recreational premises for negligence. Since this standard of care is imposed upon the State by statute, the trial court was bound to take judicial notice thereof (CPLR 4511, subd [a]). In our view, public policy prohibits the application to the State of a lesser standard of care than that required by the statute simply because the State failed to assert the statutory standard at trial.* We also find that although claimant was not actually hiking at the time of her accident, her seating herself on the guardrail was incidental to her entry of the campsite and also to her hiking activity (*Curtiss v County of Chemung,* 78 AD2d 908, 909), and, therefore, is within the statute.

■ As the owner and operator of this public campsite, the State, as any owner of lands who opens them for public use, is liable to persons engaged in the recreational activities enumerated in section 9-103 of the General Obligations Law only "for willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity" (General Obligations Law, § 9-103, subd 2, par a; *Cutway v State of New York,* 89 AD2d 406 [decided

---

* *Martin v City of Cohoes* (37 NY2d 162), relied upon by the dissent, does not require a contrary result. *Martin* involved the use at trial of an incorrect condition precedent (notice of defect) as an element of the plaintiff's cause of action. Here, however, we are confronted with the trial court's application of the wrong standard of care, which goes to the very heart of the merits of this case. Our power to review a trial court's improper ruling in the interests of justice despite the defendant's failure to object is well settled (see 7 Weinstein-Korn-Miller, par 5501.11). Moreover, since the State is the defendant herein, and public moneys are at issue, the strong public policy considerations referred to in *Martin* come into play.

herewith]). This standard is nothing more than a statutory restatement of the common-law duty of care owed to a licensee (*Wight v State of New York,* 93 Misc 2d 560, 563) and remained unaffected by the decision in *Basso v Miller* (40 NY2d 233) which overruled the prior common-law categories of landusers (*Curtiss v County of Chemung, supra,* p 910).

Translating this statutory standard into common-law language, claimant was required to prove that the railing of this bridge on which she sat constituted an inherently dangerous instrumentality, known to the State, which the State had reason to believe claimant could not have discovered for herself and that the State failed to exercise the necessary degree of care to prevent foreseeable injury to her by appropriate warnings and otherwise (*Beauchamp v New York City Housing Auth.,* 12 NY2d 400, 405; *Curtiss v County of Chemung, supra*). Claimant has failed to prove a breach of this statutory duty. Even if the railing could be considered an inherently dangerous instrumentality, a fact not free from doubt, claimant's injury was not reasonably foreseeable, but rather was caused by her own conduct in electing to use the railing as a perch from which to view the scenic surroundings and not as the handrail for which it was intended. Furthermore, claimant admits that she tested the railing by shaking it before she climbed upon it and found it to be firm, a condition which was also found by the State employees who inspected it after the 1975 Labor Day accident. The condition of the railing before claimant's accident was as apparent to claimant as it was to the State. Therefore, the State would have no reason to believe that claimant could not have discovered the dangerous condition herself, if the State employees after their inspection did not know it was dangerous.

Accordingly, claimant's burden under the statute (General Obligations Law, § 9-103, subd 2, par a) was not met and the trial court properly dismissed the claim.

The judgment should be affirmed, without costs.

MAHONEY, P. J. (dissenting). We respectfully dissent from the majority's statement since, in our view, claimant should have been awarded a verdict against the State on the issue of liability.

Central to our disagreement with the result reached by the majority is our view that section 9-103 of the General Obligations Law is not relevant to this case. We reach this conclusion not on the basis of claimant's argument that this statute does not apply to public landowners (see *Cutway v State of New York,* 89 AD2d 406 [decided herewith]; *Wight v State of New York,* 93 Misc 2d 560), but on the narrower ground that it was never raised by either party at any time during the trial and is advanced by the State in support of its position for the first time in its brief on this appeal. As such, it is our view that the parties have consented by their conduct to have the State's liability tried on the "reasonable care" standard enunciated by the Court of Appeals in *Basso v Miller* (40 NY2d 233). "[P]arties to a civil litigation, in the absence of a strong countervailing public policy, may consent, formally or by their conduct, to the law to be applied". (*Martin v City of Cohoes,* 37 NY2d 162, 165.)

We see no violation of public policy in allowing the State to voluntarily subject itself to a standard of care which, although concededly more favorable to a claimant trying to collect an award for damages sustained, would generally be applicable to the State if the facts involved did not bring the claim within the limited purview of section 9-103 of the General Obligations Law.

While there are distinctions between this case and *Martin v City of Cohoes* (*supra*), which involved a woman who sued the City of Cohoes for injuries sustained when her shoe became caught in a public sidewalk, they are without legal significance and the above-quoted principle established in that case controls here. In *Martin,* the parties erroneously tried the case on the assumption that the city had to have actual rather than written notice of the alleged defect in order for the plaintiff to prevail. The parties in the instant claim, as evidenced by their pleadings, proof and arguments to the trial court, proceeded on the mistaken legal premise that the State could be liable for damages caused merely by its failure to use reasonable care under all the circumstances, rather than the lesser duty imposed on owners of land kept open for recreational purposes (General Obligations Law, § 9-103). In both cases, how-

ever, the mistake was made on a legal principle involving an essential element of the injured party's case (i.e., compliance with the applicable prior notice ordinance in *Martin* and the State's duty of care to claimant in the instant case). We would, therefore, bind the parties to the legal theory upon which they tried the lawsuit. Absent any countervailing public policy, this result preserves the integrity of the trial and prevents one party from making those proceedings a mockery by injecting a new legal theory into the case for the first time on appeal.[*]

Having determined the standard to be applied to the State's conduct, the question remains as to whether the State exercised reasonable care under all of the circumstances. Since the case was tried without a jury, this court may weigh the evidence and grant the judgment which should have been granted by the trial court (*Shipman v Words of Power Missionary Enterprises*, 54 AD2d 1052). We disagree with the conclusion reached by the Court of Claims that the State was not negligent in the care and maintenance of the pedestrian bridge involved in claimant's accident. It is uncontradicted that the State was aware that a vehicle had struck the cable barring vehicular traffic on the bridge some 10 months prior to claimant's accident. Also uncontradicted is the fact that the vehicular incident involving the bridge caused one of the metal uprights at the end of the bridge to bend, and that at least three State employees examined the post at various times prior to claimant's accident. Each examination consisted solely of shaking the damaged post by hand to see whether it was still sturdy.

Under these circumstances and in view of the fact that it was certainly foreseeable that a person hiking through a

---

[*] The majority contends that since the standard of care governing land used for recreational purposes is imposed by statute, the trial court was bound to take judicial notice of it. This very argument, however, was the basis for the Appellate Division's reversal of the trial court in *Martin v City of Cohoes* (44 AD2d 864), an argument which was impliedly rejected by the Court of Appeals in its ultimate decision reversing the Appellate Division and upholding the actions of the trial court (*Martin v City of Cohoes*, 37 NY2d 162). Nor can a distinction be made between the local law involved in *Martin* and the statute involved in the instant case since the judicial notice statute, by its very terms, applies with equal effect to both (CPLR 4511, subd [a]).

State campsite would attempt to sit on a railing along a pedestrian bridge, we do not share the trial court's view that the State, acting through its employees, acted reasonably in failing to repair the damaged upright on the basis of these "shake tests" which revealed that the post was still secure. As evidenced by the ultimate collapse of one of the horizontal rails when sat upon by claimant, the structure was damaged and a more thorough examination was required in order to determine whether the bridge remained safe for all of its reasonably intended purposes. Accordingly, we would reverse the judgment of the Court of Claims dismissing the claim and render judgment on the issue of liability in favor of claimant.

LEVINE and WEISS, JJ., concur with CASEY, J.; MAHONEY, P. J., and KANE, J., dissent and vote to reverse in an opinion by MAHONEY, P. J.

Judgment affirmed, without costs.