OPINION OF THE COURT
Leonard Silverman, J.
This is a timely filed claim for damages arising out of *704 injuries sustained by Jeffrey Costanza (hereinafter claimant). Upon consent of the parties, this matter was bifurcated and this decision concerns itself solely with the issue of liability.
The testimony at trial discloses that at about 9:00 p.m. on September 19, 1986, claimant left his home to go to a "party” at the abandoned Edgewood State Hospital. Along the way he met a friend, Rosario Oliva, who decided to accompany him. After parking the car, the two individuals walked along a dirt path leading to the perimeter of the grounds to the main building. The property was lit only by the light of the moon.
Claimant saw and disregarded a security car and guard near the main gate. He knew the building had been abandoned for years. Jeffrey testified that although he lived only one and a half miles from the hospital, he was there only once before and never in the building where the accident occurred.
Claimant entered the building by stepping over the door that was lying on the ground. He followed his friend up the stairs. The hallway and staircase were dark. The only light was from the moon shining through the windows and a cigarette lighter held by Rosario. The party was on the seventh floor and, depending upon estimates, attended by as few as 30 or as many as 100 people. Refreshments consisted of chips and two or three, five-gallon beer balls. Claimant denied drinking any beer. After socializing for about 30 minutes, Jeffrey decided to leave since he was late for a date.
He began looking for the staircase. He saw an opening which he thought was a hallway and another opening beyond the first that he thought led to the stairs. There was a minimal amount of light coming from beyond the opening.
We now know the openings he saw were the elevator shaft. When claimant walked toward the light, he fell into the shaft.
Claimant was found about 1:00 a.m. by friends as they were leaving. He was assisted by them and taken to a nearby convenience store. Police and an ambulance were summoned and claimant was taken to the hospital.
The Edgewood facility consisted of a number of buildings and grounds measuring hundreds of acres. The entire facility was abandoned in 1971. In the years following, it was allowed to deteriorate. Initially, there were reports of a small number of brush fires. Over the years, the number and magnitude of fires increased annually. In 1983, there were 46 reported brush fires and 11 structural fires.
On the date of this accident, a cyclone fence stretched along *705 the hospital’s Commack Road frontage. However, there were holes and missing sections in this fence. In addition, the fence did not enclose the property along its sides. The defendant hired a security company which supplied personnel to allegedly patrol the area and prevent trespassing. From the testimony, it appears that two security cars and the personnel were stationed at the main gate and remained there.
From all the people entering and the activity in the buildings that night and prior thereto, it is obvious that the security guards were of little, if any, deterrence. The same can be said of the signs that were posted along the perimeter that advised of dangerous conditions.
Photographs in evidence show most, if not all, windows broken. The roofs on the buildings were missing. Testimony conclusively established that the interior of the main building was strewn with rubble and debris. Doors, walls and pipes were broken or missing. Credible, disinterested testimony established the presence of empty beer cans throughout. There can be no doubt that teenagers and adults used the premises as a playground.
The trial record is replete with evidence of actual notice to the defendant of the conditions at the hospital. In 1981, a meeting was attended by State and local elected officials, representatives of the fire district and the New York State Office of General Services. Minutes of the meeting reflect discussions about the fires, vandalism and the need to seal the buildings. Minutes of a similar meeting in June 1984, attended by representatives from New York State Office of General Services and Department of Environmental Conservation, reflect the same problems and concerns. The local fire commissioner predicted that it is only a matter of time until a fireman or child would be seriously hurt or killed.
On September 12, 1984, a five-page letter was sent to the Governor pleading for the premises to be secured. The letter characterized the building as a trap and an inherently dangerous instrumentality. The letter stated that the buildings are in their final stages of destruction and in imminent danger of collapsing.
Due to the manner in which claimant was injured, we must focus on the elevator shafts in the main building. The elevators were of the type that had two sets of doors, one opposite the other. Therefore, the shaft had two openings. Claimant sustained his injury when he fell from the seventh floor. Both *706 sets of doors enclosing the shaft on the seventh floor were missing. As a result of the missing doors, claimant could see through the shaft to the hallway on the opposite side. This specific condition of the elevator shaft existed since at least 1985. There was a prior reported incident of a 26-year-old man falling into the shaft.
The defendant, as the owner of the buildings and grounds involved, is obligated to maintain its property in a reasonably safe condition where foreseeability is the measure of liability (Basso v Miller, 40 NY2d 233). The State has a duty of care commensurate with that of a private individual (Pizzola v State of New York, 130 AD2d 796). However, foreseeability of harm alone is not enough (Waters v New York City Hous. Auth., 69 NY2d 225). Liability will be imposed on a landowner who fails to take reasonable precautions to prevent foreseeable accidents provided there is also a duty of care (Diven v Village of Hastings-On-Hudson, 156 AD2d 538).
The duty of care is not abrogated because the property was vacant (Benjamin v City of New York, 99 AD2d 995), or because claimant entered without permission and the building was closed to the public (Scurti v City of New York, 40 NY2d 433), or that claimant was misusing the premises, where such misuse was foreseeable (Cruz v New York City Tr. Auth., 136 AD2d 196).
The duty of care will be limited by claimant’s reasonable expectations under the circumstances. The defendant will be relieved of its duty where the claimant has made an informed estimate of risks involved in an activity, voluntarily undertakes the activity and is injured as a result of those risks (Turcotte v Fell, 68 NY2d 432). The defendant’s obligation in such a situation is to make the premises as safe as they appear to be so that claimant can fully comprehend and see the risks which will be assumed (Drew v State of New York, 146 AD2d 847).
It is without doubt that claimant, who was 19 years old, was extremely foolhardy for entering the abandoned building in the dark. By voluntarily entering, he assumed the risk of injury only from those risks clearly obvious and the known dangerous conditions. It is not necessary to this doctrine, that claimant could foresee the exact manner in which the injury occurred, but he must be aware of the mechanism from which the injury arose (Maddox v City of New York, 66 NY2d 270). The claimant may not be held to have consented to an injury- *707 causing event, unless it was known, apparent or readily foreseeable (O’Neill v Daniels, 135 AD2d 1076, lv denied 71 NY2d 802). The essence of assumption of risk is the doing of an act and recognizing the possible consequences thereof under circumstances evidencing the voluntary acceptance of the danger (Yarborough v City Univ., 137 Misc 2d 282).
The defendant asserts that claimant, having invited himself into the derelict and dangerous structure assumed the risk of injury as soon as he decided to enter the grounds and that the defendant fulfilled its duty by providing premises that were no more dangerous than they appeared to be.
We might accept the defendant’s reasoning if the injury was not caused by a fall into the elevator shaft. Claimant was aware that the premises were abandoned and in a dilapidated condition but, there is no evidence that claimant had any reason to believe the elevator shaft was open. With both sets of elevator doors missing and the ability to see through to the hallway on the other side, it appeared that the hallway continued through the opening. This appearance was deceptive and the premises were not as safe as they appeared to be.
The mechanism which produced this injury was the open shaft. This defect was not perfectly obvious. Without claimant being aware of that open shaft, or evidence that it was readily observable and he failed to see it, we cannot find that claimant assumed the risk of falling into the shaft (O’Keeffe v State of New York, 140 AD2d 998).
In determining whether defendant breached its duty of care, the reasonableness of the defendant’s acts or omissions must be assessed in view of all the circumstances, including the likelihood of injury to others, seriousness of injury and the burden of avoiding the risk (Preston v State of New York, 59 NY2d 997). We must consider the likelihood of claimant entering the premises, the location of the property in relation to populated areas, accessibility and whether there have been prior incidents of unauthorized entry (Scurti v City of New York, supra).
The building in which Jeffrey was injured had missing doors, windows, and walls. More significant to our conclusion is the open elevator shaft. The totality of the conditions rendered the building inherently dangerous (Runkel v City of New York, 282 App Div 173). The defendant even concedes that the building was "a derelict and obviously dangerous structure”. Where the defendant allows a dangerous condition *708 to exist, it must undertake measures to prevent injury or neutralize the condition (O’Keeffe v State of New York, supra). Even if the building was not in imminent danger of collapsing, the failure of the defendant to secure the building as required (State Uniform Fire Prevention and Building Code, 9 NYCRR 1154.1) constitutes a dereliction of its duty (Beauchamp v New York City Hous. Auth., 12 NY2d 400).
The evidence overwhelmingly indicates that the presence of claimant was foreseeable. The defendant received complaints from the community and was aware of the increasing number of fires, ongoing vandalism and accumulating debris left behind by those using the abandoned buildings. Even without the actual notice, it is clear that the foregoing was occurring for many years. The State should have realized that nighttime was when claimant and others would utilize this unsecured, abandoned building, situated in close proximity to residential areas, to engage in various illicit activities common to that age group. Claimant’s conduct was not lacking in concern for his own well-being to such a degree as to place it beyond the realm of foreseeability.
Knowing that people were in the buildings, the defendant had to act reasonably. The burden of avoiding the risk was minimal, considering the likelihood and seriousness of injury. All the defendant had to do was blockade the entrances to the buildings and have the security guards patrol and aggressively chase trespassers.
There is not a scintilla of evidence that the defendant did anything to correct the conditions at the hospital or remove Code violations which required that doors, windows and openings in buildings vacant for over 60 days be secured to prevent entry (9 NYCRR 1154.1).
The failure to take any measures to correct the condition or prevent injury to others was unreasonable and constituted a breach of duty which caused injury to claimant. For this, the defendant must respond in damages.
However, the claimant is not free from contributing to his injury. The court had ample opportunity to assess claimant’s credibility. We accept the fact that he fell into the elevator shaft. We did not, however, find him to be particularly forthright or candid with regard to the other aspects of his testimony.
Rosario Oliva testified that he partied at the hospital two or three times a week. Donald Gerbino, the friend who found *709 claimant, stated he went there once a week. Claimant went that night after he received a telephone call from an unnamed friend informing him of the party at the hospital. He left his house alone, specifically to go to the party. Without having been there before he knew that the party was in the main building. The frequency of the parties, his being called that evening and his knowledge of where to go is not consistent with never having been to similar parties before.
We also reject claimant’s contention that he did not drink any beer. The officer who responded to the convenience store testified that claimant appeared “highly intoxicated”. Although some signs of intoxication are similar to those of a concussion, the officer detected a strong smell of alcohol on claimant’s breath. We further credit the testimony of the admitting nurse and her notes which reflect claimant’s own admission that he was drinking.
Claimant’s act of walking about a darkened, dilapidated and abandoned building is a failure to exercise reasonable care for his own safety. Claimant was obligated to ascertain that he could proceed safely prior to his proceeding into darkness (Halstead v Kennedy Valve Mfg. Co., 36 AD2d 1005).
We have no doubt that claimant’s failure to use common sense and secure some means of artificial illumination was the primary cause of this accident. It did not, however, rise to the level where we would consider it to be a superseding or intervening act of negligence. Under all the circumstances, we find this accident 60% attributable to claimant and 40% to the State.